## McKAY v. SMITH.

1. FRAUD—BURDEN OF PROOF.
   One alleging fraud as the basis for the rescission of a contract has the burden of proof.[1]

2. SAME—NOT LIGHTLY INFERRED—MUST BE SHOWN—RESCISSION OF EXECUTED CONTRACT.
   Fraud may not be lightly inferred, and when urged as a basis for the rescission of an executed contract, it must be shown by the evidence to the satisfaction of the court.[2]

3. VENDOR AND PURCHASER — RESCISSION OF CONTRACT PROPERLY DECREED WHERE INDUCED BY FRAUD.
   In a suit for the rescission of a contract for the purchase

[1]Cancellation of Instruments, 9 C. J. § 189; Fraud, 27 C. J. § 170; [2]Cancellation of Instruments, 9 C. J. § 195; Fraud, 27 C. J. §§ 170, 199.

False representations by vendor as to quality or condition of soil as grounds for rescission of contract, see note in L. R. A. 1917C, 273.

of a farm on the ground of fraud, the court below properly
decreed rescission where the evidence showed that defend-
ants represented that the farm was thoroughly under-
drained, that the representation was untrue, that it was
a material representation, and that plaintiffs relied on it.[3]

Appeal from Bay; Houghton (Samuel G.), J. Sub-
mitted January 27, 1926. (Docket No. 122.) De-
cided April 14, 1926. Rehearing denied July 1, 1926.

Bill by Max McKay and another against Merton A.
Smith and another for the rescission of an exchange
of real property on the ground of fraud. From a
decree for plaintiffs, defendants appeal. Affirmed.

*B. J. Henderson*, for plaintiffs.

*Lewis J. Weadock*, for defendants.

McDONALD, J.    In December, 1922, the plaintiff
Max McKay was engaged in the practice of optometry
in Bay City, Michigan.    The defendants owned and
occupied Sunrise farm, consisting of 40 acres located
near Bay City, in Bay county.    The plaintiffs wished
to buy such a farm, and the defendants wished to sell.
They were brought together by Guy Catto, a real estate
broker of Bay City.    An agreement was reached by
which the plaintiffs were to purchase the farm for
$15,500, and to make payment therefor as follows:
$5,000 in cash, $6,000 by deed of their residence in
Bay City, and their note for the balance secured by
a mortgage on the farm in the sum of $4,500.    In
accordance with this agreement the sale of the farm
was consummated.

After being on the farm for about four months the
plaintiffs began this suit for a rescission of the con-
tract, alleging in their bill that they were induced to
make purchase of the property through fraud and

[3]Cancellation of Instruments, 9 C. J. § 195; Vendor and Pur-
chaser, 39 Cyc. p. 1437.

misrepresentation on the part of the defendants. The alleged fraud consisted of false representations in regard to the drainage of the land, the age and condition of the apple and pear orchards, and the quantity and quality of fruit which they annually produced. The defendants answered denying each and every allegation of fraud. On the hearing the circuit judge found that the defendants had falsely represented that the land was thoroughly underdrained throughout, and he entered a decree for the rescission of the contract. The defendants have appealed.

In such cases the law places upon the plaintiffs the burden of proving the fraud alleged. Fraud cannot be lightly inferred, but especially when urged as a basis for the rescission of an executed contract, it must be shown by the evidence to the satisfaction of the court. The only question in this case is whether the plaintiffs have sustained this burden of proof.

As to the alleged misrepresentations in regard to the orchards, the circuit court was not convinced that the plaintiffs had established the fraud charged. Our examination of the evidence leads us to the same conclusion. The evidence is more convincing that misrepresentations were made in regard to the drainage of the farm, and that they were relied on by the plaintiffs. The plaintiff Max McKay testified that Mr. Smith represented to him that the farm was thoroughly drained and tiled and in excellent working order, that it was the only garden farm in that neighborhood that was drained, that this was the reason he had made such a success of it, that because it was so thoroughly underdrained he could get on his land earlier than his neighbors, which enabled him to put in his crops earlier and get the early market. Don McKay, a brother of the plaintiff, testified that he was present on one occasion during the negotiations and heard Mr. Smith say that the farm was thoroughly

underdrained.    Mr. Catto, the real estate broker who
sold the farm for Smith, testified that Smith repre-
sented to McKay that the farm was all underdrained
partly  with  wooden  tile  and  partly with  ordinary
tile.

The defendant Merton E. Smith made no very posi-
tive denial of this testimony.    He testified:

"*Q.* What is the fact as to there being drains on the
farm?
"*A.* Well, it is—not all been underdrained, but all
that I told Mr. McKay has been underdrained.    There
is a piece in the northwest corner of the place that I
distinctly told Mr. McKay never had been any drain-
ing done.    *    *    *
"*Q.* What, if anything, was said as to the drainage
in the orchard being tile or wood or what?
"*A.* I told him they were underdrained.
"*Q.* What was said as to the character of the drains?
"*A.* Yes, I said part of it was tile and part box."

We think it clearly appears from the evidence that
Mr. Smith represented to the plaintiffs that he was
selling them a drained farm.

The plaintiffs bought the farm in December, 1922.
They  moved  on  to  it  early  in  April,  1923.    It  is
claimed by them, and not denied by the defendants,
that when the time came to put in crops the land was
so wet that they could not work it.    They complained
to Mr. Smith and asked him to show them·where the
drains were.    He was unable to do so.    In his testi-
mony he said, "The drains have not been good for the
last few years, the outlets were not in shape to let them
work.    I think they could be cleaned, but perhaps
some of them are decayed and in such shape they
couldn't be good anyway.    I don't know as to that."
This and other testimony which it is not necessary to
quote shows that the drains which had been put in
many years before were practically useless when the
farm came into possession of the plaintiffs.

Plaintiff McKay testified that he relied on these representations:

"Q. Did you buy it entirely on the representation?

"A. As far as drainage was concerned, I did; I could see some of the other things but I couldn't see the drainage, and wouldn't know how to judge it if I did."

The circuit judge made a correct disposition of the issues involved in this case. The evidence shows that the defendant Smith represented to the plaintiffs that the farm was thoroughly underdrained, that the representation was untrue, that it was a material representation, and that the plaintiffs relied on it. In view of this conclusion as to the facts, the plaintiffs are entitled to the relief given them by the decree of the circuit court.

A like decree will be entered in this court. The plaintiffs will have costs.

Bird, C. J., and Sharpe, Snow, Steere, Fellows, Wiest, and Clark, JJ., concurred.