QUEST DIAGNOSTICS, INC v MCI WORLDCOM, INC

Docket Nos. 227384, 227394. Submitted May 7, 2002, at Detroit. Decided December 10, 2002, at 9:00 A.M. Leave to appeal sought.

Quest Diagnostics, Inc., and others brought actions in the Oakland Circuit Court against MCI WorldCom, Inc., Corby Energy Services, Inc., and others, seeking damages for economic losses sustained when Corby ruptured a water main while performing underground work on behalf of the other defendants. The trial court in both cases, Richard D. Kuhn, J., granted summary disposition in favor of the defendants on the basis that the economic loss doctrine precluded any recovery by the plaintiffs. The plaintiffs appealed and their appeals were consolidated. After defendants other than Corby filed a notice of bankruptcy, the Court of Appeals stayed the appeals with regard to them and allowed the appeals to proceed as they relate to defendant Corby only.

The Court of Appeals *held*:

1. The economic loss doctrine, which is derived from the Uniform Commercial Code and whose basic premise is that economic losses that relate to commercial transactions are not recoverable in tort, has been applied in Michigan in actions in which the parties to the litigation were involved, either directly or indirectly, in a transaction for goods.

2. Parties to a transaction for goods are precluded recovery in tort for economic loss caused by inferior products where the parties or others closely related to them had the opportunity to negotiate the terms of the sale of the product causing the injury and their economic expectations can be satisfied by contractual remedies. Here, there was no contract, commercial transaction, or any other kind of relationship that existed between the parties.

3. A negligence claim may be advanced solely on a claim of economic loss. There must be a transaction that provides an avenue by which the parties are afforded the opportunity to negotiate to protect their respective interests in order for the economic loss doctrine to bar recovery in tort. The transactions involving the contractual relationships between the defendants in this matter are not sufficiently related to the plaintiffs' claim to give rise to application of the economic loss doctrine. The plaintiffs' claim does not fall

within the scope of the UCC and should not be barred by the economic loss doctrine.

Reversed and remanded.

1. TORTS — UNIFORM COMMERCIAL CODE — ECONOMIC LOSS DOCTRINE.

The economic loss doctrine derives from the Uniform Commercial Code and its basic premise is that economic losses that relate to commercial transactions for goods or products are not recoverable in tort when damages are recoverable under the UCC; the doctrine does not apply where the claim emanates from a contract for services or where the plaintiff could not have anticipated a safety hazard involved in a product through bargaining or negotiation at the time of the transaction or purchase; a negligence claim may be advanced solely on a claim of economic loss.

2. TORTS — ECONOMIC LOSS DOCTRINE.

The parties to a transaction for goods are precluded recovery in tort for economic loss caused by inferior products where the parties or others closely related to them had the opportunity to negotiate the terms of the sale of the product causing the injury and their economic expectations can be satisfied by contractual remedies.

*Hyman Lippitt, P.C.* (by *Kenneth F. Neuman* and *Daniel J. McCarthy*), *Mantese Miller and Mantese, PLLC* (by *E. Powell Miller* and *Gerald Mantese*), and *Urso, Palmer & Ross, P.C.* (by *Anthea E. Papista*), for Quest Diagnostics, Inc.

*Jenner & Block* (by *Ross B. Bricker, Jeffrey A. Koppy*, and *Sally Sears Coden*), *Howard & Howard, P.C.* (by *Robert A. Maxwell* and *Brian E. Etzel*), *Kevin P. Gallagher* and *Nicole Bynum* for MCI WorldCom, Inc., MCI WorldCom Communications, Inc., and MCI WorldCom Network Services, Inc.

*Garan Lucow Miller, P.C.* (by *Roger A. Smith* and *Robert D. Goldstein*), for Corby Energy Services.

Before: MARKEY, P.J., and TALBOT and ZAHRA, JJ.

ZAHRA, J. In these consolidated appeals, plaintiffs[1] appeal as of right from the trial court's order granting summary disposition for defendants. We reverse and remand to the extent that these cases relate to defendant Corby Energy Services, Inc. (Corby).

### FACTS AND PROCEDURE

In June 1999, defendant Corby ruptured a water main while performing underground work on behalf of defendants MCI WorldCom, Inc., MCI WorldCom Communications, Inc., and MCI WorldCom Network Services, Inc. (collectively the MCI defendants). Plaintiffs brought this negligence action, alleging that as a result of the broken water main, they were without running water for several days, they had to boil their drinking water for several days, and the business plaintiffs were forced to close or curtail their operations. Plaintiffs also brought a claim alleging negligence per se based on defendants' failure to obtain a permit authorizing the excavating work.[2] Defendants moved for summary disposition, arguing that the economic loss doctrine and public policy considerations precluded any recovery by plaintiffs because plaintiffs

---

[1] In this opinion, "plaintiffs" refers to Quest Diagnostics, Inc., and the Water Main Break Litigation plaintiffs, a purported class of individuals and businesses, including David Shea, Pam Carveth, Kim and Mark Aumann, The ½ Off Card Shop, Inc., Pravis Industries, Inc., Cosmetic Dermatology and Vein Centers of North Oakland County, P.C., and all other "individuals, proprietorships, partnerships, corporations and other businesses and legal entities in Michigan that were affected by the damage to the water main in Auburn Hills in June 1999." The Water Main Break Litigation plaintiffs brought a motion for class certification, but defendants' motion for summary disposition was granted before the trial court ruled on the issue of class status.

[2] On appeal, plaintiffs do not specifically challenge the trial court's dismissal of the claim alleging negligence per se.

sought purely economic damages. The trial court granted summary disposition for defendants and these appeals followed.

Oral argument in this case was heard in May 2002. On August 2, 2002, the MCI defendants filed a notice of bankruptcy in these consolidated appeals. On August 16, 2002, this Court ordered the administrative closure of the appeals on the ground that further proceedings were stayed by 11 USC 362 because of the MCI defendants' bankruptcy filing. Plaintiffs filed a motion for rehearing of the stay order. This Court granted in part the motion for rehearing, allowing the appeals to proceed only as they relate to defendant Corby.

### ANALYSIS

Plaintiffs argue that the trial court erred in granting summary disposition on the basis that the economic loss doctrine barred plaintiffs' claims. We review de novo a trial court's decision on a motion for summary disposition. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). Under MCR 2.116(C)(8), a motion for failure to state a claim for which relief may be granted tests the legal sufficiency of the pleadings. *Simko v Blake*, 448 Mich 648, 654; 532 NW2d 842 (1995). "All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant." *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). Summary disposition under MCR 2.116(C)(8) is proper when a claim is so clearly unenforceable as a matter of law that no factual development could establish the claim and justify recovery. *Simko, supra.*

A large majority of jurisdictions in the United States have adopted some form of a judicially created limitation on tort actions that seek to recover economic damages resulting from commercial transactions. This limitation is known as the economic loss doctrine. *Mt Lebanon Personal Care Home, Inc v Hoover Universal, Inc*, 276 F3d 845, 848 (CA 6, 2002), citing Frumer & Friedman, Products Liability, (2000), § 13.11[1]. The economic loss doctrine is derived from the Uniform Commercial Code (UCC). According to White & Summers, Uniform Commercial Code (Hornbook Series, 4th ed), p 386, "the economic loss doctrine [is] a crude proxy for the dividing line between what is tort and what is not." The doctrine's basic premise is that economic losses that relate to commercial transactions are not recoverable in tort. White and Summers reason:

> Putting aside injury to third parties that arises out of conventional tortious behavior and ignoring personal injury to the buyer, we see no reason why all other liability arising out of defective goods ought not be under Article 2. By hypothesis the parties to these suits negotiate with one another. If the buyer does not protect its own interest adequately, adequate backup protection is given by Article 2 doctrines such as unconscionability in 2-302, restriction of disclaimers under 2-316, and limitation on disclaimer of remedy under 2-719. Courts should be particularly skeptical of business plaintiffs who—having negotiated an elaborate contract or having signed a form when they wish they had not—claim to have a right in tort whether the tort theory is negligent misrepresentation, strict tort, or negligence. [*Id.*, pp 386-387.]

The Michigan Supreme Court formally adopted the economic loss doctrine in *Neibarger v Universal*

*Coop, Inc*, 439 Mich 512; 486 NW2d 612 (1992), explaining that

> " '[w]here a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only "economic" losses.' " This doctrine hinges on a distinction drawn between transactions involving the sale of goods for commercial purposes where economic expectations are protected by commercial and contract law, and those involving the sale of defective products to individual consumers who are injured in a manner which has traditionally been remedied by resort to the law of torts. [*Id.* at 520-521 (citations omitted).][3]

If a commercial purchaser were allowed to sue in tort to recover economic loss, the UCC would be rendered meaningless and " 'contract law would drown in a sea of tort.' " *Id.* at 528, quoting *East River Steamship Corp v Transamerica Delaval Inc*, 476 US 858, 866; 106 S Ct 2295; 90 L Ed 2d 865 (1986).

Since *Neibarger*, the economic loss doctrine in Michigan has been applied in the context of various transactions for goods or products to bar recovery in tort when damages are recoverable under the Uni-

---

[3] The Supreme Court recognized that the term "economic loss" may be a misnomer:

> "It would be better to call it a 'commercial loss,' not only because personal injuries and especially property losses are economic losses, too—they destroy values which can be and are monetized—but also, and more important, because tort law is a superfluous and inapt tool for resolving purely commercial disputes. We have a body of law designed for such disputes. It is called contract law. Products liability law has evolved into a specialized branch of tort law for use in cases in which a defective product caused, not the usual commercial loss, but a personal injury to a consumer or bystander." [*Id.* at 522, quoting *Miller v United States Steel Corp*, 902 F2d 573, 574 (CA 7, 1990).]

form Commercial Code. *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41; 649 NW2d 783 (2002) (involving the sale of a boat); *MASB-SEG Prop/Cas Pool, Inc v Metalux*, 231 Mich App 393; 586 NW2d 549 (1998) (involving the sale of a light fixture); *Citizens Ins Co v Osmose Wood Preserving, Inc*, 231 Mich App 40; 585 NW2d 314 (1998) (involving the sale of flame-retardant chemicals applied to roofing materials); *Huron Tool & Engineering Co v Precision Consulting Services, Inc*, 209 Mich App 365; 532 NW2d 541 (1995) (involving the sale of a software system); *Krupp PM Engineering, Inc v Honeywell, Inc*, 209 Mich App 104; 530 NW2d 146 (1995) (involving the sale of a furnace component).[4] This Court has extended the economic loss doctrine beyond commercial transactions involving sophisticated users to the sale of consumer goods, even when the plaintiff consumer enters into a transaction with an entity of greater knowledge or bargaining power. *Sherman, supra* at 47-50 (economic loss doctrine applied when the individual consumer plaintiff purchased a boat from the defendant manufacturer).[5]

---

[4] A majority of jurisdictions limit the economic loss doctrine to those cases in which only the product itself is damaged or the damage is closely related to the use of that product. See, e.g., *East River Steamship Corp, supra* at 871 (admirality law); *Miller*, n 3 *supra* at 574-576 (applying Wisconsin law); *Kershaw Co Bd of Ed v United States Gypsum Co*, 302 S C 390, 393; 396 SE2d 369 (1990); *Clark v Int'l Harvester Co*, 99 Idaho 326, 333; 581 P2d 784 (1978). Michigan's economic loss doctrine is broader than other jurisdictions in that it not only includes damage to the product itself, but may also include damage to other property when "this damage was within the contemplation of the parties to the agreement . . . ." *Neibarger, supra* at 532; see also *Detroit Bd of Ed v Celotex Corp (On Remand)*, 196 Mich App 694, 703; 493 NW2d 513 (1992).

[5] While a small minority of jurisdictions limit the economic loss doctrine to business purchases, most jurisdictions extend its application to both business and consumer purchases. *Mt Lebanon Personal Care Home, Inc, supra* at 848.

A factor present in all cases in which Michigan courts have applied the economic loss doctrine is that the parties to the litigation were involved, either directly or indirectly, in a transaction for goods. For example, in *Metalux, supra* at 402, this Court focused on the parties involved and the nature of the product's use in concluding that the economic loss doctrine applied. Both parties were "sophisticated commercial entities who had the knowledge and ability to allocate liability in their purchase and sale agreement." *Id.* Furthermore, the purchase was for a commercial purpose. *Id.* This Court concluded that the economic loss doctrine applied and the plaintiff's exclusive remedy was provided by the UCC because the consequences of the product's potential failure were likely to have been contemplated by the parties when they entered into the agreement for the sale. *Id.*

This Court has declined to apply the economic loss doctrine where the claim emanates from a contract for services. See *Higgins v Lauritzen*, 209 Mich App 266; 530 NW2d 171 (1995).[6] This Court has also concluded that the economic loss doctrine does not apply when a plaintiff could not have anticipated a safety hazard involved in a product through bargaining or negotiation at the time of the transaction or purchase. *Detroit Bd of Ed v Celotex Corp (On Remand)*, 196 Mich App 694, 705; 493 NW2d 513 (1992). In *Celotex Corp*, this Court determined that

---

[6] As noted in *In re Starlink Corn Products Liability Litigation*, 212 F Supp 2d 828, 839, n 6 (ND Ill, 2002), although the economic loss doctrine traditionally applies to cases involving defective products, the doctrine has expanded in some jurisdictions to include most contractually acquired services. However, there is considerably less uniformity among jurisdictions, particularly with respect to the growing number of exceptions courts have carved out, when applied to services. *Id.*

the economic loss doctrine did not apply where the plaintiffs sued the defendant manufacturer of asbestos products that were used in the plaintiffs' school buildings. *Id.* at 703-705. This Court explained that the economic loss doctrine applied to commercial transactions where "the parties have the ability to bargain for the terms of sale, including warranties, disclaimers, and limitation of remedies." *Id.* at 702. In *Celotex Corp*, the plaintiffs did not claim that the products at issue, which contained asbestos, were inferior in quality, deteriorated, or caused injury to other products, but instead claimed that the products were safety hazards that created a potential health risk. *Id.* at 704-705. This Court observed that the economic loss doctrine was not applicable because the plaintiffs could not have anticipated and bargained over the hazards of asbestos at the time of the sale. *Id.* at 705.

On the basis of *Neibarger* and its progeny, we conclude that parties to a transaction for goods are precluded recovery in tort for economic loss caused by inferior products where: (1) the parties or others closely related to them had the opportunity to negotiate the terms of the sale of the good or product causing the injury, and (2) their economic expectations can be satisfied by contractual remedies. *Neibarger*, *supra* at 520-529; *Celotex Corp*, *supra* at 702-703; *Sullivan Industries, Inc v Double Seal Glass Co, Inc*, 192 Mich App 333, 339-340; 480 NW2d 623 (1991). In the present case, there was not a contract, commercial transaction, or any other kind of relationship that existed between the parties. Without a contract or transaction, plaintiffs could not have bargained for any terms of the service or anticipated any risks in

defendant Corby's underground work. Thus, this case does not involve a situation where the parties' economic expectations have been bargained for and established by agreement. Plaintiffs are consumers of water who allege that their access to the water supply was interrupted as a result of defendant Corby's negligence in damaging the water main. Because there is no underlying sale of goods, transaction, or contract between the parties or others closely related to them, plaintiffs have no recourse against Corby under commercial or contract law. Utilizing the broadest interpretation of Michigan's economic loss doctrine, plaintiffs are not limited to remedies in contract or the UCC, but have a proper remedy in tort.

Defendant Corby's only argument in support of applying the economic loss doctrine is that the damages sustained by plaintiffs are purely economic.[7] However, a negligence claim may advance solely on a claim of economic loss. See, e.g., *Case v Consumers Power Co*, 463 Mich 1; 615 NW2d 17 (2000). In order for the economic loss doctrine to bar recovery in tort, there must be a transaction that provides an avenue by which the parties are afforded the opportunity to negotiate to protect their respective interests. The

---

[7] We reject plaintiffs' assertion that they have also alleged personal injury. As stated by the trial court in its opinion granting summary disposition:

> [T]he plaintiffs in the Water Main Break file alleged only that "[e]ven after water service is restored, residents and businesses will be forced to boil city water to avoid becoming sick from bacteria and other contaminants which infected the water as a result of Defendants' damage to the water main." However, this is not an allegation of an injury. It is only an allegation of what steps may have to be taken to avoid injury. The balance of Plaintiffs' allegations are not for personal injury or property damage.

transactions in the present case are not sufficiently related to plaintiffs' claim to give rise to application of the economic loss doctrine. We recognize that it may be argued that plaintiffs purchased their water from their local unit of government and thus there was a transaction for goods that would give rise to application of the UCC. However, defendant Corby was not in any way related to this transaction in such a manner that it may be said that Corby was either directly or indirectly involved in the transaction. Rather, defendant Corby contracted with the MCI defendants to provide excavating services. In the course of performing their contract, Corby's allegedly tortious behavior resulted in injury to plaintiffs—third parties unrelated to the Corby-MCI transaction. This type of claim does not fall within the scope of the UCC and should not be barred by the economic loss doctrine. See White & Summers, *supra*, p 386 (expressly precluding from the economic loss doctrine "injur[ies] to third parties that arise[] out of conventional tortious behavior . . ."). Given that this case involves only negligence claims and there is no underlying contract governing the parties' economic expectations, the economic loss doctrine does not apply.

Defendant Corby's reliance on *Rinaldo's Constr Corp v Michigan Bell Tel Co*, 454 Mich 65; 559 NW2d 647 (1997), and *Mieras v DeBona*, 452 Mich 278; 550 NW2d 202 (1996), to support summary disposition in this case is misplaced. Corby cites a portion of *Mieras* in which Justice BOYLE quoted from an Oregon case: "Standing alone, without a duty to plaintiff derived from defendant's contractual undertaking, plaintiff's tort claim would confront the rule that one ordinarily is not liable for negligently causing a stran-

ger's purely economic loss without injuring his person or property." *Id.* at 300 (BOYLE, J.), quoting *Hale v Groce*, 304 Or 281, 283-284; 744 P2d 1289 (1987). That quote must be considered in context. The issue in *Mieras*, was whether a beneficiary named in a will may pursue a tort action against the attorney who drafted the will. The majority determined that an intended will beneficiary may enforce an attorney's contractual duty to his testator client to include the beneficiary in the will and that the same contract creates a legal duty of care to the intended beneficiary based on that party's status as a third-party beneficiary under the will. *Mieras, supra* at 299-302 (BOYLE, J.). Accordingly, the majority held that "beneficiaries named in a will may bring a tort-based cause of action against the attorney who drafted the will for negligent breach of the standard of care owed to the beneficiary by nature of the beneficiary's third-party beneficiary status." *Id.* at 308 (BOYLE, J.). As discussed, in the present case there was no contractual relationship between the parties. Thus, the Court's reasoning in *Mieras* with respect to whether tort damages could be recovered on the basis of the defendant's failure to perform his contractual duties is inapplicable.

Likewise, the holding in *Rinaldo's Constr Corp* is not directly applicable to this case. That case held that for the purpose of determining whether an alleged failure to perform under a contract supports an action in tort, the threshold inquiry is whether the plaintiff alleges a violation of a legal duty separate and distinct from the contractual obligation. *Rinaldo's Constr Corp, supra* at 83-84; see *Sherman, supra* at 48. Again, in the present case there was no contract

between the litigants or entities closely related to them. Further, plaintiffs' tort claim is not based on the failure to perform a contract. Thus, this Court's discussion in *Rinaldo's Constr Corp*, *supra* at 84-85, regarding recovery of economic loss in the context of whether a separate, distinct duty arises during the performance of a contract, is not dispositive of this case.

Our conclusion that the economic loss doctrine does not apply in this case is not altered by prior cases in which this Court "expressly rejected the argument that the economic loss doctrine does not apply in the absence of privity of contract." *Citizens Ins Co*, *supra* at 45,[8] citing *Freeman v DEC Int'l, Inc*, 212 Mich App 34; 536 NW2d 815 (1995),[9] and *Sulli-*

---

[8] In *Citizens Ins Co*, the builders of a restaurant installed wood trusses and a plywood roof decking that had been treated for flame retardancy with chemicals manufactured by the defendant. *Id.* at 41-42. A subcontractor had treated the wood materials according to instructions provided by the defendant. *Id.* at 42. The plaintiff, an insurer holding the subrogated rights of the restaurant owner, alleged that the materials treated with the defendant's chemicals deteriorated and collapsed, causing damage to the restaurant. *Id.* Although there was no privity of contract between the parties, an underlying contract existed between the restaurant owner (the commercial consumer) and the builder of the restaurant, who had hired the subcontractor to treat the roofing materials with the defendant's chemicals. *Id.* In the present case, on the other hand, there is no underlying contract that governed plaintiffs' economic expectations.

[9] In *Freeman*, the plaintiff dairy farmers purchased an electric milking system that had parts manufactured by the defendant. *Id.* at 35. The plaintiffs sued the defendant after discovering that a decline in milk production was attributable to stray voltage from the milking system. *Id.* This Court explained that, regardless of privity of contract, the UCC applies when the plaintiff is a commercial buyer suing a manufacturer of goods for economic losses. *Id.* at 38. This Court then held that the plaintiffs' claims were barred by the UCC statute of limitations. *Id.* at 38-39. As in *Citizens Ins Co*, the parties in *Freeman* were not in privity of contract, but the plaintiffs' expectations were governed by an underlying contract between the plaintiffs and the seller of the milking system. The parties had the opportunity to negotiate the terms of the purchase and their economic expectations could be satisfied by contractual remedies.

*van, supra.*[10] In each of the cases where the economic loss doctrine was applied absent privity of contract, the defendant was a supplier of a product, the plaintiff was the consumer of that product, and the economic losses emanated from the failure of the product to meet the expectations of the product consumer. In each case, there was a contract or commercial transaction that governed the plaintiff's economic expectations.

Thus, while this Court has applied the economic loss doctrine to bar tort claims against parties who were suppliers of components of goods purchased by the plaintiffs, there is no support for applying the doctrine in the absence of a transaction between the parties or others closely related to them, whereby the allocation of risks could be negotiated. Here, there was no transaction between the parties that is used as the basis of plaintiffs' claims. Accordingly, there is no basis for applying the economic loss doctrine in this case to bar plaintiffs' tort claim, and we refuse to extend this judge-made doctrine to these circumstances.

---

[10] *Sullivan* is another case where this Court held that the plaintiff's claims were limited by the UCC where the plaintiff's expectations were governed by a commercial transaction. In *Sullivan,* one of the defendants, a sealant manufacturer, supplied sealant to the other defendant, a glass part supplier, who, in turn, supplied glass parts to the plaintiff manufacturer for making doors and windows. *Sullivan, supra* at 336-337. The plaintiff brought claims based on tort and contract against the defendants after the glass parts turned out to be defective. *Id.* at 337-338. This Court held that the absence of privity between the sealant manufacturer defendant and the plaintiff did not preclude application of the economic loss doctrine and that the plaintiff's tort claims against the sealant manufacturer defendant were barred. *Id.* at 344-345. Once again, this Court found the economic loss doctrine to be applicable in a case where privity was not present, but a contract for goods existed, which governed the underlying transaction.

We also decline to consider at this time defendant Corby's alternative argument for dismissal that is based on public policy grounds. According to Corby, plaintiffs' negligence claim is barred by a policy against "mass tort claims" by potentially thousands of plaintiffs proceeding solely on allegations of economic damages. Corby cites several cases from other jurisdictions in making its public policy argument. Significantly, the trial court in this case did not rule on the Water Main Break Litigation plaintiffs' motion for class certification. The court determined the issue was moot after it ruled that plaintiffs' claims were barred by the economic loss doctrine. Under these circumstances, Corby's assertion that this case involves a mass tort claim with the potential for disproportionate economic exposure is speculative. Given that the number of plaintiffs in this case is defined by the pleadings below, we are not inclined to speculate regarding the proper policy in the event a class is certified or the number of plaintiffs is significantly increased.[11]

Reversed and remanded. We do not retain jurisdiction.

---

[11] Plaintiffs' argument regarding tortious ejectment was not preserved for our review because it was not raised and addressed below. Thus, we decline to address it. *Fast Air, Inc v Knight*, 235 Mich App 541, 549; 599 NW2d 489 (1999). Moreover, given our conclusion that the trial court erred in granting summary disposition to defendants on the basis of the economic loss doctrine, we need not consider plaintiffs' additional argument that their claims fit a "danger exception" to the economic loss doctrine.