# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

BLACKWARD PROPERTIES, LLC,

        Plaintiff/Counter
        Defendant/Appellant–Cross
        Appellee,[1]

v

CHARLES D. SOWER and REAL ESTATE ONE,
INC. d/b/a MAX BROOCK REALTORS,

        Defendants/Counter Plaintiffs-
        Appellees/Cross-Appellants,

and

RONALD L. HUGHES and HUGHES
ACQUISITION,

        Defendants,

and

HARRY BLACKWARD and D'ANNE
KLEINSMITH,

        Third-Party Defendants-Cross-
        Appellees,

and

PRIVATE BANK & TRUST COMPANY,

        Defendant-Appellee.

UNPUBLISHED
November 4, 2014

No.   313282
Oakland Circuit Court
LC No.   2010-112094-CZ

BLACKWARD PROPERTIES, LLC,

        Plaintiff/Counter Defendant-

---

[1] For ease of comprehension, we will refer to the parties by name rather than role.

Appellant,

v

CHARLES D. SOWER and REAL ESTATE ONE, INC. d/b/a MAX BROOCK REALTORS,

        Defendants/Counter Plaintiffs-
        Appellees,

and

RONALD HUGHES and HUGHES ACQUISITION,

        Defendants,

and

HARRY BLACKWARD and D'ANNE KLEINSMITH,

        Third-Party Defendants-Appellants,

and

PRIVATE BANK & TRUST COMPANY,

        Defendant-Appellee.

No. 314445
Oakland Circuit Court
LC No. 2010-112094-CZ

---

BLACKWARD PROPERTIES, LLC,

        Plaintiff/Counter Defendant-
        Appellant,

v

CHARLES D. SOWER and REAL ESTATE ONE, INC. d/b/a MAX BROOCK REALTORS,

        Defendants/Counter
        Plaintiffs/Third-Party Plaintiffs-
        Appellees,

and

RONALD L. HUGHES and HUGHES ACQUISITION,

No. 315072
Oakland Circuit Court
LC No. 2010-112094-CZ

                    Defendants/Counter Plaintiffs-
                    Third-Party Plaintiffs,

and

HARRY BLACKWARD and D'ANNE
KLEINSMITH,

                    Third-Party Defendants,

and

PRIVATE BANK & TRUST COMPANY,

                    Defendant-Appellee.

Before: GLEICHER, P.J., and SERVITTO and RONAYNE KRAUSE, JJ.

PER CURIAM.

This consolidated appeal arises out of the foreclosure of certain commercial real estate in Birmingham, Michigan, and the events surrounding that foreclosure and the owner's attempts to develop the property. We affirm in both the appeal and the cross-appeal.

Harry Blackward, a principal of Blackward Properties, LLC, purchased the property and, in 2005, used the property as collateral for a loan from The PrivateBank (TPB). Rentable commercial buildings originally stood on the property, but Blackward demolished them in 2007 on the understanding that Bank of America (BOA)'s predecessor would finance the construction of a new branch on the property, which ultimately did not happen. Blackward's long-time friend Charles Sower assisted him in various aspects of his dealings. Blackward alleges that the property was fraudulently over-appraised in 2005. He attempted to sell or lease the property but was unable to do so before TPB commenced foreclosure proceedings because the loan was in arrears. After the foreclosure proceedings were initiated, Blackward and Ronald Hughes, on behalf of Hughes Acquisition, signed a letter of intent to purchase the property, but Hughes terminated the sale after learning about the foreclosure proceedings. The property was sold at a sheriff's sale to TPB. The principals of Blackward Properties purported to assign "all of their claims regarding the Property" to Blackward Properties and quitclaimed the property to Blackward Properties. The redemption period expired, and Blackward commenced the instant action. Much of Blackward's theories of the case entail alleged complicity between the various defendants or other wrongful conduct intended to deprive Blackward of the properties.

Blackward Properties contends that the trial court should not have granted summary disposition in favor of the various defendants. We disagree. A grant or denial of summary disposition is reviewed de novo on the basis of the entire record to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). When reviewing a motion under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, we consider all evidence submitted by the parties in the light most favorable to the non-moving party and grants summary disposition only where the evidence fails

-3-

to establish a genuine issue regarding any material fact. *Id*. at 120. "Whether one party owes a duty to another is a question of law reviewed de novo." *Brown v Brown*, 478 Mich 545, 552; 739 NW2d 313 (2007).

Blackward alleged breach of fiduciary duty against Charles Sower, negligent supervision against REO, and silent fraud, civil conspiracy, and concert of action against both Sower and REO. "[A] fiduciary relationship arises from the reposing of faith, confidence, and trust and the reliance of one upon the judgment and advice of another." *Vicencio v Ramirez*, 211 Mich App 501, 508; 536 NW2d 280 (1995). Confidential or fiduciary relationships generally entail some measure of inequality in the relationship, giving one person sufficient superiority or influence over the other that he or she can effectively exercise dominion over the other. *In re Estate of Karmey*, 468 Mich 68, 74 n 3; 658 NW2d 796 (2003). Brokers are considered to be fiduciaries within the context of their role as agents. *Stephenson v Golden*, 279 Mich 710, 734-746, 756-761; 276 NW 849 (1937). However, a fiduciary relationship does not arise merely because the parties are friends or business acquaintances or otherwise merely in some kind of interpersonal relationship. *Schuur v Berry*, 285 Mich 654, 660; 281 NW 393 (1938); *Teadt v Lutheran Church Missouri Synod*, 237 Mich App 567, 581-581; 603 NW2d 816 (1999).

Although Blackward contends that Sower was his broker, we do not believe that to accurately represent the parties' relationship. Sower concedes that he is, in fact, a real estate broker, and in a deposition he described his role regarding Blackward's property as "[b]roker and friend, attempting to facilitate." However, Blackward retained other parties to list the property and merely signed commission agreements with Sower to compensate Sower for any leases that might arise out of Sower's contacts with potentially interested parties. It appears manifest from the record as a whole that although Sower worked with Blackward, Blackward never placed in Sower the kind of blind trust or authority that would have given Sower any meaningful "advantage or superiority" over Blackward. We consequently conclude that Sower did not owe Blackward a fiduciary duty under these circumstances; consequently, we need not consider the trial court's causation findings, and because the remainder of Blackward's claims against Sower and REO are predicated on a fiduciary duty, we likewise need not consider them.[2]

The trial court found Blackward Properties's claims against TPB barred by, *inter alia*, the economic loss doctrine. The economic loss doctrine precludes tort actions for breaches of contractual duties unless the plaintiff could maintain the action independently even if no contractual relationship between the parties had existed. See *Hart v Ludwig*, 347 Mich 559, 565; 79 NW2d 895 (1956); *Quest Diagnostics, Inc v MCI WorldCom, Inc*, 254 Mich App 372, 376; 656 NW2d 858 (2002); *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 48; 649 NW2d 783 (2002). Blackward Properties's claim of aiding and abetting a breach of fiduciary duty fails because Sower owed no such duty to Blackward. Michigan law does not recognize an independent claim for breach of the covenant of good faith and fair dealing, and Blackward

---

[2] We also need not consider the Sower defendants' cross-appeal from the trial court's orders denying their motions for summary disposition on the grounds of judicial estoppel and plaintiff's failure to mitigate.

Properties admitted that it did not have a breach of contract claim against TPB. *Belle Isle Grill Corp v City of Detroit*, 256 Mich App 463, 476; 666 NW2d 271 (2003). Blackward Properties otherwise fails to articulate any duty TPB owed it that did not involve performance under one or another contractual instrument, so the economic loss doctrine properly precludes the tort claims. Without an underlying tort, Blackward's claims of civil conspiracy and concert of action also fail. *Cousineau v Ford Motor Co*, 140 Mich App 19, 37; 363 NW2d 721 (1985).[3]

Because Sower did not owe a fiduciary duty to Blackward, Ronald Hughes and Hughes Acquisition could not have aided and abetted a breach of that duty. In its silent fraud claim, Blackward Properties asserts that the Hughes defendants had a duty to disclose certain material facts about the foreclosure of the property, but even if they possessed the alleged information, Blackward Properties fails to provide any legal support for his assertion that the Hughes defendants owed him a duty. A fiduciary relationship generally cannot arise between parties with adverse interests. See *Beaty v Hertzberg & Golden, PC*, 456 Mich 247, 260-261; 571 NW2d 716 (1997). As a buyer-seller relationship, we deem Blackward and the Hughes defendants to have such adverse interests. In the absence of an established duty, the claims of silent fraud, civil conspiracy, and concert of action against the Hughes defendants also necessarily fail.

Consequently, we conclude that the trial court correctly granted summary disposition in favor of the various defendants.

Blackward Properties also argues that the trial court erroneously granted case evaluation sanctions to the Sower defendants and attorney fees to the Hughes defendants, or in the alternative that the amounts thereof were unreasonable. We disagree.

We review a trial court's decision whether to grant case-evaluation sanctions under MCR 2.403(O) de novo." *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008). We review a trial court's decision not to invoke the "interests of justice" exception for an abuse of discretion. *Haliw v Sterling Heights (On Remand)*, 266 Mich App 444; 702 NW2d 637 (2005). An award of attorney fees will be upheld unless it appears that the trial court's finding on the "reasonableness" of the fees was an abuse of discretion. *Wood v Detroit Auto Inter-Ins Exch*, 413 Mich 573, 588; 321 NW2d 653 (1982).

Blackward Properties does not argue that case evaluation sanctions were improper pursuant to MCR 2.403(O)(1), under which a party that rejected a case evaluation and who does not ultimately receive a more favorable verdict must pay the opposing party's actual costs. Rather, Blackward argues that the trial court should have invoked the "interests of justice" exception pursuant to MCR 2.403(O)(11). The interest of justice exception may apply "where a

---

[3] Having affirmed the trial court's grant of summary disposition on the grounds of the economic loss doctrine, we need not address the statute of limitations and real party in interest issues. Since we do not address the real party in interest issue, we need not address whether the trial court erred when it denied plaintiff's motion to amend its complaint to substitute Harry Blackward, D'Anne Kleinsmith, and Harry Blackward, LLC, as plaintiffs.

legal issue of first impression is presented," or "where the law is unsettled and substantial damages are at issue, where a party is indigent and an issue merits decision by a trier of fact, or where the effect on third persons may be significant." *Haliw*, 266 Mich App at 448 (internal quotations and citations omitted). Presuming the damages are indeed substantial, Blackward Properties merely asserts that the relevant law is unsettled without identifying any such unsettled law. We decline to guess at what that law might be. *Peterson Novelties*, *Inc v City of Berkley*, 259 Mich App 1, 14; 672 NW2d 351, 359-60 (2003). Consequently, we find that the trial court properly declined to invoke the "interests of justice" exception.

The party requesting attorney fees has the burden of showing that they are reasonable. *Smith*, 481 Mich at 528. The trial court should first consider the "fee customarily charged in the locality for similar legal service," and multiply that by "the reasonable number of hours expended in the case." *Id*. at 531. The trial court should additionally consider six other factors: "(1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client." *Wood*, 413 Mich at 588. The court should also consider any nonoverlapping factors found in MRPC 1.5 concerning fees, as well as any other factors relevant in the particular case. *Id*. The trial court need not detail its findings with regard to each specific factor considered. *Id*.

The record shows that the Sower defendants used the Economics of the Law Practice Surveys published by the State Bar of Michigan to show that their fees were reasonable given the location and size of their firm and the years of practice and experience of the attorneys. They submitted detailed billing statements from the date of case evaluation rejection until the date they filed their motion for sanctions, and they submitted an affidavit from one of their attorneys stating that the services charged for were actually performed. Blackward Properties raised and extensively discussed its objections at an evidentiary hearing. In response, the trial court reduced costs from $25,000 to $20, and fees from approximately $150,717 to $115,172. We find that the record amply shows that the trial court did not abuse its discretion in computing the amount of attorney fees awarded as sanctions for the case evaluation rejection.

Blackward Properties contends that attorney fees were improperly awarded to the Hughes defendants based on ¶ 15.8 of the two parties' purchase agreement because Blackward did not breach it. We disagree. We enforce contracts according to their terms, examining written contractual language and giving words their plain and ordinary meanings. *Holland v Trinity Health Care Corp*, 287 Mich App 524, 526-527; 791 NW2d 724 (2010).

The Hughes defendants specifically asserted that Blackward Properties breached ¶ 12, which states in relevant part:

> Seller is aware of no actions, suits, liens, or proceedings, pending or, to Seller's knowledge, threatened, against Seller with respect to the Property or affecting any of its rights with relation to the Property . . . nor is Seller aware of any facts which to its knowledge might result in any action suit or proceeding.

Blackward Properties contends that Blackward was unaware of the impending foreclosure when he signed the purchase agreement, but the record shows that he was aware at the time that he was

in default on his loans and that he had not cured the default by the date set by TPB for taking further action. Even if Blackward was not aware that TPB would, in fact, foreclose, he was certainly aware of "facts which to [his] knowledge might result in any action[,] suit or proceeding," and that he represented otherwise by signing the purchase agreement.

Blackward Properties argues that the Hughes defendants breached the purchase agreement by terminating it. However, according to ¶ 6 of the purchase agreement, Hughes Acquisition could, upon written notification to the seller prior to the end of the period, terminate the agreement at its sole discretion during the initial 60-day due diligence period if any aspect of the property was unacceptable to the buyer. In such an event, the seller was obligated to return the earnest money to the buyer immediately, and neither party would be further obligated to the other. Hughes Acquisition terminated the agreement, in writing and through its attorney, the day before the initial due diligence period ended. Any suggestion that Hughes did not terminate the agreement in good faith is mere conjecture. Consequently, as the sole nonbreaching party, the Hughes defendants were "entitled to recover all costs associated with enforcing this Agreement, including reasonable attorney fees" pursuant to ¶ 15.8 of the purchase agreement.

In the alternative, Blackward Properties argues that the Hughes defendants achieved only a return of the $5,000 earnest payment, so the fees awarded were unreasonable considering the results achieved. Blackward asserts that the fees awarded were not limited to those "associated with enforcing" the purchase agreement, but include those spent defending against Blackward's claims. We disagree. To prevail on their claim for the return of the earnest payment, the Hughes defendants also needed to prevail over Blackward Properties's multi-million dollar claims, which required involvement in the extensive discovery taken on those claims. Fees expended to defeat a claim or counterclaim are a necessary part of prevailing on a party's own claim or counterclaim. See *In First Sec Sav Bank v Aitken*, 226 Mich App 291, 319-320; 572 NW2d 307 (1997), rev'd on other grounds, *Smith v Globe Life Ins Co*, 460 Mich 446 (1999). The Hughes defendants provided detailed statements of billing costs, hourly rates, and an attorney affidavit stating that all work had been done. Blackward Properties discussed with the court its objections to the award. We find that the trial court's measure of the reasonableness of the fees awarded was not an abuse of discretion.

Blackward Properties next argues that the trial court abused its discretion when it denied its motion to conduct discovery concerning the allegedly undisclosed business relationship between Hughes and Sower. We disagree. Michigan is strongly committed to open and far-reaching discovery. *In re Hammond Estate*, 215 Mich App 379, 386; 547 NW2d 36 (1996). However, discovery is not unlimited, and the trial court is obligated to protect other parties from "excessive, abusive, or irrelevant discovery requests." *Id.* at 386-387. Discovery that takes on the appearance of a "fishing expedition" is properly denied. *Id.* The alleged conspiracy between Sower and Hughes was at issue in the first complaint, and Blackward Properties failed to uncover any evidence thereof after a year of discovery and extensive depositions. We find no abuse of discretion in the trial court concluding that any further discovery on the issue was excessive or a fishing expedition.

Finally, Blackward Properties argues that a trial judge who disqualified herself in September of 2012 after Blackward filed a grievance with the Judicial Tenure Commission should not have issued certain decisions the month prior. Curiously, Blackward Properties does

not contend that the judge was *actually* biased, but rather that if the judge found the JTC grievance sufficient in September, it should have been sufficient before issuing the August decisions. We find this claim untenable. JTC grievances do not automatically require disqualification. *People v Bero*, 168 Mich App 545, 551; 425 NW2d 138 (1988). Repeated rulings against a party also do not indicate bias. *Band v Livonia Associates*, 176 Mich App 95, 118; 439 NW2d 285 (1989). Rather, "the challenger must prove a judge harbors actual bias or prejudice for or against a party or attorney that is both personal and extrajudicial." *Van Buren Twp v Garter Belt Inc*, 258 Mich App 594, 598; 673 NW2d 111 (2003). Blackward has not established an actual lack of judicial impartiality, and we find this claim to be nothing more than an attempted collateral attack on the trial judge's orders. We find that no error attaches to the fact that the judge issued orders in this case in August 2012, prior to disqualifying herself.

On cross-appeal, Sower and REO contend that the trial court erred in granting summary disposition in favor of Blackward Properties regarding their counterclaim for breach of contract. We disagree.

Sower and REO argue that Sower agreed to a bifurcated payment of his commission, with half being paid when Blackward Properties received financing for its proposed development, and the other half when BOA moved into its new building on the property. Blackward Properties argues that Sower never agreed to the bifurcated payment scheme and that the trial court erred in presuming a condition precedent to the payment of the commission.

The record shows that Blackward eventually agreed to pay Sower a 3% commission on the net lease over its original term. The lease was signed in 2006, yet two years later, the parties were still discussing payment arrangements. In a June 2008 email to Blackward, Sower acknowledged without further comment Blackward's plan to pay half the commission when financing was obtained and the rest when the bank moved into the building. In the same email, Sower objected to Blackward's proposal to spread payment of the commission over a twenty year period. Blackward testified at his deposition that he never agreed to pay the full commission before BOA occupied the space. He believed that Sower agreed to the split-payment arrangement. Sower believed that he had not agreed, but that he would nevertheless receive his commission after BOA moved into the building. Sower said that he had earned the commission, but understood that he would not be paid the commission unless the building was actually built and occupied by BOA. Sower stated that he believed he needed to continue working with Blackward to resolve the issues that remained with the city and with financing. Consequently, the evidence shows that neither party expected the commission to be paid prior to the construction and occupancy by BOA of the new building, and Sower and REO provided no evidence to the contrary sufficient to show a genuine question of material fact.

Sower and REO alternatively argue that Blackward Properties was unjustly enriched by receiving the benefit of a 20-year lease with LaSalle/BOA. Unjust enrichment is "(1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant." *Keywell & Rosenfeld v Bithell*, 254 Mich App 300, 327-28; 657 NW2d 759 (2002) (quotation marks and citation omitted). It is undisputed that Blackward Properties did not in fact benefit from the lease or consummate the deal with Hughes. Even if the lease was instrumental in obtaining an additional $600,000 development loan from TPB, that loan was not a benefit given to Blackward Properties by Sower and REO, and in any

event Blackward Properties did not retain it.  Consequently, the trial court properly granted summary disposition in favor of Blackward Properties regarding Sower and REO's unjust enrichment claim.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Deborah A. Servitto
/s/ Amy Ronayne Krause