RUBIN *v.* CROWLEY, MILNER & CO.

1. SALES—CONTRACTS—UNIFORM SALES ACT—PROVISIONS OF CONTRACT CONTROLLING.

Where the buyer retained and sold certain plush coats, although it is admitted they were not according to sample, which was apparent upon inspection, and the seller offered to accept a return of them as provided in the written contract, the buyer is liable, in an action for the contract price, the uniform sales act (3 Comp. Laws 1915, § 11832 *et seq.*) having no application, since the contingency which arose was provided for in the contract and is controlled thereby.

2. SAME.

As to what the rights of the parties would have been had the contingency not been provided for in the contract,— *quære.*

3. SAME—DECLARATORY OF COMMON LAW.

Section 11900, 3 Comp. Laws 1915, being section 69 of the uniform sales act, providing remedies for breach of warranty, is but declaratory of the common law.

Error to Wayne; Lamb (Fred S.), J., presiding. Submitted May 3, 1921. (Docket No. 102.) Decided June 6, 1921.

Assumpsit in justice's court by Harry Rubin against Crowley, Milner & Company for goods sold and delivered. There was judgment for plaintiff, and defendant appealed to the circuit court. Judgment for plaintiff on a directed verdict. Defendant brings error. Affirmed.

*Lucking, Helfman, Lucking & Hanlon (Laurence M. Sprague,* of counsel), for appellant.

*George E. Brand* and *Irwin I. Cohn,* for appellee.

FELLOWS, J. On June 20, 1919, defendant gave plaintiff's salesman an order which was accepted for 18 plush coats at $22.50 apiece. The accepted order under the head "Note: Conditions of Purchase," contained among others the following provision:

"All goods in excess of purchase or different from samples or specifications, returnable at shipper's expense."

In due season plaintiff sent on 18 plush coats to defendant, which defendant's testimony shows were different from the sample shown and were not in accordance with the order in this: that they were not H. & H. plush, were not 42 inches long but were 36 inches in length, were not 80 inches in sweep, and were but 70 inches in sweep, *i. e.*, the measurement around the bottom of the coat; the cuffs were not set on but were tacked on; they were without windshields which were ordered. All of these defects were patent, and were discovered upon inspection. Defendant promptly notified the plaintiff of the defects and plaintiff offered to accept a return of the goods. This was refused. Defendant retained the coats and sold them. Negotiations both by mail and personal interviews were fruitless and defendant sent plaintiff a check for the amount of the bill less $5.00 per garment which it insisted, and now insists, is the amount of its damage and loss. Plaintiff refused to accept the check and this suit resulted. Upon the trial in the court below both parties asked for a directed verdict, plaintiff for the full amount claimed, and defendant for the amount of its tendered check. Plaintiff relied upon *Solomon* v. *Weiner*, 188 Mich. 114, to which should be added the cases of *Stearns Salt & Lumber Co.* v. *Dennis Lumber Co.*, 188 Mich. 700; *Cheboygan Paper Co.* v. *Eichberg*, 184 Mich. 30, and *Pennsylvania Rubber Co.* v. *Detroit Shipbuilding Co.*, 186 Mich. 305, which cases were called to counsel's

attention by the court. Defendant relied upon numerous provisions of the uniform sales act (3 Comp. Laws 1915, § 11832 *et seq.*), and particularly sections 11900 and 11880. Defendant's counsel did not seem to contend but that the former decisions of this court were to the effect that where the parties to a transaction were both dealers, and there was opportunity to inspect, that implied warranties did not survive the acceptance after inspection, but did insist that such rule was changed by the uniform sales act and that it was entitled to recoup its damages for the breach of both an express and an implied warranty.

The trial judge was of the opinion that inasmuch as plaintiff offered to accept a return of the coats and such offer was refused, he was, under the terms of the contract, entitled to recover the contract price. He, therefore, directed a verdict for plaintiff for the full amount. His direction was correct and his reason sound. The parties by their contract had provided in advance for precisely the situation which arose, and had expressly agreed upon what should be done by each in case of that contingency. If the goods were different from the sample or specification, defendant agreed to return them at shipper's expense, and plaintiff agreed to receive them. This by the agreement was the measure of their liability. The case upon principle is controlled by *Hunt* v. *W. F. Hurd Co.,* 205 Mich. 142. In that case a contract was entered into for the sale and shipment of lumber of a certain grade. If the lumber shipped was not up to grade the entire shipment was to be held intact and the seller notified within five days. Some of the lumber was not up to grade. Defendant stored it and in his defense of an action brought to recover the full contract price sought to invoke the provisions of the uniform sales act (3 Comp. Laws 1915, § 11875, subd. 4). We there said:

"The difficulty we encounter in attempting to follow

counsel's line of reasoning lies in the fact that we here have a special agreement between the parties. It cannot be doubted that at common law the parties had the right to contract; nor can it be claimed that the legislature by the uniform sales act has attempted to take away such right. In subdivision 4 of the section of the act relied upon by defendant's counsel it is expressly provided:

" 'The provisions of this section are subject to any usage of trade, special agreement, or course of dealing between the parties.'

"There is no claim of fraud in procuring the contract. While it is made by the correspondence of the parties it is free from ambiguity and by its express terms covered and provided for the exact situation which subsequently developed. It was expressly stipulated that 'if any shipment' was of 'different grade * * * all of the shipment shall be held intact subject to our inspection or order,' and required complaint to be made in five days. There is no claim that defendant complied with these provisions; indeed, it is admitted that it used the entire shipment except the small amount that did not come up to grade, did not make complaint within the five days, and when it made remittance included $33 per thousand as payment for the rejected 6,200 feet of lumber. The parties who made this contract are business men of experience. They dealt at arms length. They are bound by their engagements."

The section of the uniform sales act here invoked to escape the effect of acceptance (§ 11880), like the one in the *Hunt Case*, recognizes the right to contract and is made applicable "in the absence of express or implied agreement of the parties."

As we have noted, the instant case is one where an express contract exists, where the parties have by express agreement provided for the contingency which arose and agreed upon the measure of their liability. Under such circumstances we do not feel called upon

to determine what the rights of the parties would be in case there was no contract, or whether the rules announced in the cases cited by plaintiff have been modified by the uniform sales act, although the question has been very ably briefed.

It may be said in passing that the other section of the uniform sales act here specially relied upon (§ 11900) has been held by this court to be but declaratory of the common law. *American Varnish Co.* v. *Globe Furniture Co.*, 199 Mich. 316, 325.

The judgment must be affirmed.

STEERE, C. J., and WIEST, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.    MOORE, J., did not sit.