KIRBY *v.* GIBSON REFRIGERATOR CO.

1. Appeal and Error—Questions Reviewable—Sales.

On appeal from directed verdict and judgment for defendant refrigerator manufacturer in action by plaintiff dealers for fraud in sale and breach of warranties as to merchantability and fitness, effect of substitution of another on contract of guaranty is passed, where main contract is signed by parties to the action.

2. Sales—Contracts—Common Law.

Although the uniform sales act is declaratory of the common law, it does not attempt to take away the common-law right of the parties to contract and may properly be considered in determining the bearing of the acts of the parties on the terms of the contract.

3. Same—Breach of Warranty—Job Lot Refrigerators.

In action against manufacturer for fraud in sale and breach of warranty with reference to refrigerators, evidence *held*, to warrant conclusion that parties were dealing in ''job lot'' mer-·chandise as to which plaintiff dealers were given full opportunity to see units in process of manufacture and operation, were fully informed and then exercised their own judgment as to fitness of the merchandise for their particular purpose; and sales contract contained express guaranty as to defective parts (2 Comp. Laws 1929, §§ 9454, 9455).

4. Same—Secondhand Merchandise—Implied Warranty.

On secondhand merchandise there is, generally, no implied warranty as to fitness.

5. Same—Implied Warranty—Sub-standard Electric Refrigerators.

Under contract whereby defendant electric refrigerator manufacturer made outright sale of sub-standard units *held*, no· warranty of reasonable fitness may be implied.

6. Fraud—Evidence—Job Lots—Sub-standard Refrigerators.

Record *held*, sufficient to justify directed verdict and judgment for defendant manufacturer in action against it by dealers for fraud incident to sale of a job lot of sub-standard electric refrigerators; where plaintiffs had not sustained their burden of proof.

Appeal from Montcalm; Hawley (Royal A.), J. Submitted June 4, 1935. (Docket No. 4, Calendar No. 38,242.) Decided January 31, 1936.

Action by Lewis H. Kirby and others, copartners doing business as Good Housekeeping Shop, against Gibson Refrigerator Company, a Michigan corporation, for breach of warranties in sale of refrigerators and fraud in procurement of sale. Directed verdict and judgment for defendant. Plaintiffs appeal. Affirmed.

*Charles L. Dibble* and *Howard & Howard,* for plaintiffs.

*Edward J. Bowman* and *Eldred & Gemuend,* for defendant.

Bushnell, J. Plaintiffs conduct a retail electric appliance business in the city of Kalamazoo, and defendant corporation is a manufacturer of refrigerators at Greenville. Desiring to add a low-priced machine to their line of merchandise, plaintiffs bought from defendants on written contract 323 "modern" electric refrigerators, consisting of "Rice" cabinets and "Gibson" units, at an average price of $65, totaling $20,995, paying $10,000 down and the balance later. Practically all the machines were sold in a short time by plaintiffs at prices ranging from $79.50 to $189.50. This action arises out of the fact that the ultimate buyers were not satisfied with the performance of the machines. According to plaintiffs' witness Vogt, "the trouble started just as soon as we started setting them up." After considerable correspondence, personal negotiations and attempts by both parties to remedy mechanical defects, plaintiffs tendered back the

goods and demanded return of the purchase money with reimbursement for expenses and resulting damages. Defendant called attention to the limited warranty in the sales contract as to defective parts, denied any other obligation, and refused to make settlement, whereupon plaintiffs brought suit alleging fraud in the procurement of the sale and breach of warranties as to merchantability and fitness. Defendant moved for a directed verdict at the close of plaintiffs' testimony, but the trial court deferred its determination until the close of defendant's proofs and then directed the jury to find a verdict of no cause of action. Plaintiffs appeal from the judgment entered on the verdict.

A lengthy record was made covering all possible phases of the difficulties encountered in the servicing of the machines sold and rented. Defendant submitted testimony tending to show that the merchandise was that ordinarily sold by it except that the cabinets were job lots and discontinued models. Since the real question is the propriety of the directed verdict, we need not discuss the controversy over performance, save to observe that it is apparent that plaintiffs, with some assistance from defendant, were kept well occupied attempting to satisfy their somewhat irate customers.

The controversial portions of the written contract, dated January 25, 1932, read:

"The refrigerator cabinets are what are known as cabinets manufactured for the Rice Refrigerator Company and are sold at a special price to you, and in which have been installed Gibson electric refrigerating units * * *.

"It is expressly understood that this sale is a complete sale and that you agree to take at least 323 Modern Electric Refrigerators, and this contract

is not subject to cancellation or modification in any way.

"It is expressly understood that the electric refrigerating units shall not be known as or exploited as Gibson electric units, or the name Gibson or Gibson manufacturer used in any way.

"The Gibson Electric Refrigerator Corporation guarantee to replace, free of charge, f. o. b. factory, Greenville, Michigan, within six months from date of sale of Gibson electric refrigerator products, any part or parts defective in material or workmanship, returned, transportation charges prepaid, to it at Greenville, Michigan, which upon examination shall disclose to its satisfaction to be thus defective; Provided, however, that the determination as to whether any of said parts or part are defective in material or workmanship shall be determined by the factory inspection department or direct representative of the Gibson Electric Refrigerator Corporation and in no case shall the liability under said guaranty exceed the price of the part replaced, as shown on the said Gibson Electric Refrigerator Corporation's current part price list. Changes in the use of devices or attachments of the machine or attachment therewith, or deviation from the published refrigerating capacity of any model when unauthorized by Gibson Electric Refrigerator Corporation automatically cancels this guarantee and releases the Gibson Electric Refrigerator Corporation from any and all responsibility."

The contract is signed by defendant and plaintiff, but it will be noted that the guaranty is by another, the effect of which substitution we pass.

The trial court fittingly characterized this as "a close case" and reasoning from, but not quoting, the uniform sales law, §§ 15 and 16 (2 Comp. Laws 1929, §§ 9454, 9455) in the light of *Dunn Road Machinery Co.* v. *Charlevoix Abstract & Engineering*

*Co.,* 247 Mich. 398 (64 A. L. R. 947), held there was neither implied warranty as to fitness under the facts presented by the testimony, nor proof of fraud.

The uniform sales act (2 Comp. Laws 1929, § 9440 *et seq.*), adopted in this State in 1913 after five to six years' use elsewhere, while declaratory of the common law, does not attempt to take away the common-law right of the parties to contract and may properly be considered in determining the bearing of the acts of the parties on the terms of the contract. *Cadillac Machine Co.* v. *Mitchell-Diggins Iron Co.,* 205 Mich. 107, and *Hunt* v. *W. F. Hurd Co.,* 205 Mich. 142.

The authority cited, *supra,* by the trial court had to do with a sale of road machinery under circumstances where the buyer made known to the seller the particular purpose for which the machine was required and relied upon the seller's skill and judgment to deliver a machine reasonably fit for such purpose. In the instant case, plaintiffs sought bargain goods and left-over merchandise and did not rely upon the seller's skill and judgment. We quote from a part of the cross-examination of plaintiffs' manager:

"We wanted a bunch of job-lot refrigerators to make a complete sale. * * * We were looking for a buy. We were looking for something we could sell cheap."

A Mr. Ashby, characterized as a "refrigerator expert," and some of the plaintiff's partners visited defendant's factory where they examined a part of the merchandise before the purchase contract was executed. Plaintiff Dewing testified that he saw some of the machines in actual operation but that Ashby did not make any tests. "He looked at them

to see that they ran quietly.'' After satisfying themselves as to defendant's financial rating and standing, plaintiffs closed the deal some days later.

Plaintiffs' witness, Kirby, denied that they wanted a job lot goods. He said:

''We were out to buy some refrigerators that would give good service with perhaps not so good a looking box and we could buy it at a low price. We were not necessarily looking for something to sell cheap; we wanted to give something good at as reasonable price—We weren't looking for junk. We got junk, but we weren't looking for it.''

Defendant's assistant general manager also testified as to the circumstances surrounding the transaction. He said that four of plaintiffs' representatives visited the factory as a result of some correspondence following a conversation in Chicago; that plaintiff Vogt said that they came over to look at a line of ''close out cabinets that we had on hand.'' The party was taken through the factory and ''given the privilege of discussing the unit or any matters that they cared to with the service department or engineering department.''

We cannôt escape the conclusion that the transaction pertained to what is generally known as ''job lot'' merchandise and that plaintiffs were given full opportunity to see the units in the process of manufacture and operation, were fully informed and then exercised their own judgment as to the fitness of the merchandise for their particular purpose, viz., for quick sale ''with a big advertising campaign'' and at a low price.

The question of an implied warranty of reasonable fitness of ''job lot'' merchandise is a new one in this State and the briefs of counsel do not disclose any authorities on the subject. It has been

held that there is no implied warranty in the sale of marked-down, left-over dressed fowls where the buyer had not relied upon the seller's skill and judgment. *Farrell* v. *Manhattan Market Co.,* 198 Mass. 271 (84 N. E. 481, 15 L. R. A. [N. S.] 884, 126 Am. St. Rep. 436, 15 Ann. Cas. 1076).

The merchandise in the case at bar was not worthless as was the situation in *Little* v. *G. E. Van Syckle & Co.,* 115 Mich. 480 (a piano), and *Moeckel* v. *Diesenroth,* 253 Mich. 284 (74 A. L. R. 116) (diseased milch cows), nor can the ice boxes and units be classified as secondhand merchandise on which the general rule is that no warranty is implied. *Bayer* v. *Winton Motor Car Co.,* 194 Mich. 222 (a used auto), and *Hysko* v. *Morawski,* 230 Mich. 221 (used pool room equipment).

In the absence of any authorities bearing directly on this question, the case should be decided in the light of the circumstances attending the transaction. We have sufficiently indicated facts showing the nature of the dealings between the parties to conclude that the goods were left-overs. The testimony indicates that defendant preferred to sell the boxes without the refrigerating units, but the combination of Rice boxes and Gibson units were finally purchased at a reduced price after an opportunity for inspection.

While careful consideration of the testimony indicates that neither party was free from blame, the buyers seeking sub-standard goods and the seller gladly disposing of shop-worn merchandise, nevertheless, under all the circumstances, we concur in the conclusion reached by the trial court as to the absence of an implied warranty in this transaction.

We are also in accord with the trial court's finding that "there can be no recovery on the ground of fraud," for fraud cannot be lightly inferred, and

the burden of proof was upon plaintiffs. The circuit court was not convinced that plaintiffs established the fraud charged and our examination of the evidence leads us to the same conclusion. *McKay* v. *Smith*, 234 Mich. 367.

The judgment is affirmed, with costs to appellees.

North, C. J., and Fead, Wiest, Butzel, Edward M. Sharpe, and Potter, JJ., concurred.

The late Justice Nelson Sharpe took no part in this decision.