DAVIS v FOREST RIVER, INC

Docket No. 270478. Submitted November 14, 2007, at Lansing.
    Decided February 21, 2008, at 9:00 a.m. Leave to appeal
    granted, 481 Mich 918.

    Keith G. Davis brought an action in the Ingham Circuit Court against
    Forest River, Inc., and Kitsmiller RV, Inc., after a recreational vehicle
    manufactured by Forest River and sold to the plaintiff by Kitsmiller
    experienced problems. The plaintiff alleged: breach of express war-
    ranty; breach of implied warranty of merchantability; revocation of
    acceptance under § 2608 of the Uniform Commercial Code (UCC),
    MCL 440.2608; breach of written warranty under the Magnuson-
    Moss Warranty—Federal Trade Commission Improvement Act
    (MMWA), 15 USC 2301 *et seq.*; breach of implied warranty under the
    MMWA; violation of the Michigan Consumer Protection Act, MCL
    445.901 *et seq.*; breach of contract; and rescission of contract.
    Kitsmiller accepted a case evaluation and was dismissed with preju-
    dice as a defendant. The claim for revocation of acceptance under
    state law was dismissed pursuant to the parties' stipulation; however,
    the plaintiff continued to seek revocation of acceptance or rescission
    as a common-law remedy through the MMWA. The court, James R.
    Giddings, J., granted summary disposition in favor of Forest River
    (hereafter the defendant) on the breach of contract claim and the jury
    found in favor of the defendant on the Consumer Protection Act
    claim. The jury also determined that the plaintiff had proven that he
    is entitled to revoke his acceptance of the recreational vehicle, and the
    court entered a judgment consistent with that determination. The
    defendant appealed from the judgment and order granting revocation
    of acceptance.

    The Court of Appeals *held*:

    1. The remedy of revocation of acceptance is a UCC remedy
    available by statute, however, the remedy is not available to the
    plaintiff because the plaintiff and the defendant were not in privity
    of contract. The plaintiff clearly pursued, and the trial court
    actually granted, the common-law equitable remedy of rescission,
    which is available irrespective of privity. The substance of the
    judgment and order must be affirmed.

    2. The MMWA does make available remedies that are available
    under state law.

3. Neither the "lemon law," MCL 257.1401 *et seq.*, nor the UCC is relevant to this matter.

4. Privity has long been categorically eliminated in Michigan as a prerequisite to purchasers' bringing suit against manufacturers. The Legislature's adoption of the UCC did not abolish rescission except where the parties actually do have a contract with each other. Privity of contract was long ago eliminated in Michigan as a prerequisite to bringing a suit, under common law, seeking rescission on the theory of breach of implied warranty.

5. The plaintiff was entitled to the verdict of rescission for a breach of implied warranty, even if it was not characterized in that way.

Affirmed.

BANDSTRA, J., dissenting, stated that the general rule requiring privity in a rescission case has not been abrogated and still stands. The enactment of the revocation-of-acceptance provisions of the UCC in Michigan constituted a repudiation of rescission as a remedy for an out-of-privity plaintiff. A contract cannot be rescinded when there was no contract in the first place. There was no contract of sale between the plaintiff and Forest River. Only money damages were appropriate, and the trial court's order should be reversed to the extent that it held otherwise.

ACTIONS — BREACH OF IMPLIED WARRANTY — CONTRACTS — PRIVITY.

Privity of contract is not a prerequisite in Michigan to purchasers' bringing suit against manufacturers seeking the common-law remedy of rescission on a theory of breach of implied warranty; the Legislature's adoption of the Uniform Commercial Code did not abolish rescission, except where the parties actually do have a contract with each other (MCL 440.1101 *et seq.*).

*Green & Green, P.L.L.C.* (by *Jonathan A. Green*), for Keith G. Davis.

*Winegarden, Haley, Lindholm & Robertson, P.L.C.* (by *Donald H. Robertson*), for Forest River, Inc.

Amici Curiae:

*Liblang & Associates, P.C.* (by *Dani L. Liblang*), for the Consumer Law Section of the State Bar of Michigan and the Michigan Trial Lawyers Association.

*McKelvie DeLuca, P.C.* (by *Frank M. DeLuca* and *Edmund S. Yee*), for General Motors Corporation.

*Dolenga & Dolenga, PLLC* (by *Michael D. Dolenga* and *Keith A. Wuotinen*), for the Recreational Vehicle Industry Association.

Before: OWENS, P.J., and BANDSTRA and DAVIS, JJ.

DAVIS, J. Defendant Forest River, Inc., appeals as of right an order granting revocation of acceptance under the Magnuson-Moss Warranty—Federal Trade Commission Improvement Act (the MMWA), 15 USC 2301 *et seq.*, to plaintiff of a recreational vehicle (RV) manufactured by Forest River and sold by Kitsmiller RV, Inc.[1] We affirm, albeit with one clarification.

As we discuss later in this opinion, the remedy of "revocation of acceptance" is actually a Uniform Commercial Code (UCC), MCL 440.1101 *et seq.*, remedy, available by statute under MCL 440.2608, but not available to plaintiff in *this* case because plaintiff and defendant were not in privity of contract. See *Henderson v Chrysler Corp*, 191 Mich App 337; 477 NW2d 505 (1991). However, it is clear from the pleadings, discussions, and arguments that plaintiff really pursued, and the trial court really granted, the equitable remedy, available at common law, of "rescission," which *is* available irrespective of privity. Our affirmance is based on the "well-settled" principle that "the gravamen of an action is determined by reading the complaint as a whole, and by looking beyond mere procedural labels to determine the exact nature of the claim." *Adams v Adams (On Reconsideration)*, 276 Mich App 704, 710-

---

[1] Kitsmiller RV accepted a case evaluation and was dismissed with prejudice as a defendant. Forest River will be referred to as the singular "defendant" in this opinion.

711; 742 NW2d 399 (2007). Therefore, we affirm the substance of the trial court's order, but not the nomenclature used.

The facts of this case are not seriously disputed. Plaintiff and his wife are avid campers. In 2002, they decided to upgrade from a relatively small Winnebago RV to a 34-foot Windzone RV manufactured by Forest River and sold by Kitsmiller RV. They were motivated in part by an injury that precluded plaintiff from easily entering and leaving the Winnebago, and partly a desire for a larger and more-luxurious vehicle that could be used for more extensive traveling. Although they had owned RVs before, and plaintiff had learned how to operate vehicles of that size while serving in the military, they had never owned a new RV before. After taking possession of the RV, plaintiff experienced numerous problems with it, some of which he concluded were safety issues. He cut short a total of three intended trips, and the RV spent several months being repaired by Forest River on two occasions. Plaintiff ultimately concluded that Forest River should take the RV back and repay his purchase price. Plaintiff has properly maintained the RV in the meantime. The only real disputes concerned the number and the severity of the problems plaintiff experienced and some testimony that all new RVs are expected to have initial problems that can be worked out.

Plaintiff's complaint alleged eight counts: breach of express warranty; breach of implied warranty of merchantability; revocation of acceptance under MCL 440.2608; breach of written warranty under the MMWA; breach of implied warranty under the MMWA; violation of the Michigan Consumer Protection Act, MCL 445.901 *et seq.*; breach of contract; and rescission of contract. The parties stipulated the dismissal of the

claim for revocation of acceptance under state law; however, a significant part of plaintiff's claim was the assertion that he was nevertheless able to seek revocation of acceptance or rescission as a common-law remedy through the MMWA. The trial court granted summary disposition to defendant on the breach-of-contract claim, and a jury found in defendant's favor on the Michigan Consumer Protection Act claim; plaintiff has not cross-appealed with regard to those matters. The jury found that plaintiff had "proven that he is entitled to revoke his acceptance of the motor home," on the basis of which the trial court entered judgment against defendant, from which defendant now appeals.[2]

The first question posed is what remedies or causes of action are provided for under the MMWA. "The applicability of a legal doctrine is a question of law. This Court reviews questions of law de novo." *James v Alberts*, 464 Mich 12, 14; 626 NW2d 158 (2001). Because there is no decision on point regarding the MMWA from the United States Supreme Court, this Court is required to make its own independent assessment of the MMWA; although federal court decisions may be persuasive, they are not controlling, even if there is no conflict between them. *Abela v Gen Motors Corp*, 469 Mich 603, 606-607; 677 NW2d 325 (2004). Under the circumstances of this case and considering the answers reached by other courts, we are not persuaded of a present necessity to answer this question. As we will discuss later in this opinion, the law in Michigan obviates any need to do so to resolve the issues at bar.

---

[2] The trial court also granted an alternative judgment in plaintiff's favor, to be effective only if this Court reversed the grant of revocation. Because of our resolution of the revocation issue, we need not address the merits of the alternative judgment and express no opinion about them.

Under the MMWA, subject to provisions not relevant here, "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief" in a state or federal court. 15 USC 2310(d)(1). The MMWA provides for an award of costs and expenses to prevailing parties, but it does not otherwise indicate what that legal and equitable relief might be. Nothing in the MMWA itself appears to mandate any sort of privity between any parties. In fact, its definition of a "supplier" suggests the opposite: The term "supplier" means "any person engaged in the business of making a consumer product directly *or indirectly* available to consumers." 15 USC 2301(4) (emphasis added). Significantly, it states that "implied warranties" arise under state law. 15 USC 2301(7). Nowhere in the MMWA is there any hint regarding the nature of the "damages and other legal and equitable relief."

The parties cite cases reaching opposite results with regard to whether the available relief under the MMWA is limited to whatever is available under state law in the jurisdiction where a suit is brought. We have not been offered any authority suggesting that a plaintiff under the MMWA is entitled to any *less* than would be available under state law, and it appears that the parties do not dispute that much. The lower federal courts are substantially divided on the issue whether the MMWA provides remedies in addition to those available under state law. In our view, whether the MMWA mandates the availability of remedies *beyond* what the state provides can only be satisfactorily determined by the United States Supreme Court. However, it seems settled that the MMWA does make available, at a

minimum, remedies that are available under state law. Because we find plaintiff here *is* entitled to a remedy under Michigan law, we need not address this question any further in this case.

We note initially two legal theories that do *not* afford plaintiff a remedy here. First, as *Henderson* discussed, "revocation of acceptance" is a purely statutory remedy under MCL 440.2608 that was "inextricably connected to the contractual relationship between a buyer and a seller," and "[t]he fact that a manufacturer may be liable under its warranty provisions does not change the fundamental nature of the revocation remedy as being contractually based." *Henderson, supra* at 341-343. The *Henderson* Court therefore found that revocation of acceptance, as a contractual remedy, required privity of contract. *Id.* Second, Michigan's "lemon law," MCL 257.1401 *et seq.*, explicitly excludes RVs and motor homes. MCL 257.1401(f). This is significant, in part, because such an exclusion is not necessarily intuitively obvious. But most importantly, the "lemon law" would give purchasers of automobiles an adequate remedy at law, *Henderson, supra* at 342, precluding an equitable remedy such as rescission from being available against automobile manufacturers. *Detroit Trust Co v Old Nat'l Bank of Grand Rapids*, 155 Mich 61, 65; 118 NW 729 (1908). We hold that neither the "lemon law" nor the UCC is relevant to this matter.

The critical issue in this case is whether a purchaser who, like plaintiff in this case, is not in contractual privity with a manufacturer may obtain the common-law remedy of rescission. We find that privity has long been categorically eliminated in Michigan as a prerequisite to purchasers' bringing suit against manufacturers, and the Legislature's adoption of the UCC did not abolish rescission except where the parties actually do have a contract with each other.

The abolition of the privity requirement was accomplished half a century ago in *Spence v Three Rivers Builders & Masonry Supply, Inc,* 353 Mich 120, 126-127; 90 NW2d 873 (1958). The case involved concrete building blocks that turned out to be defective after they had been used to construct buildings; the problem was that the plaintiff purchased the blocks from an intermediary who was not reachable at the time of the action, not from the manufacturer itself. *Id.* at 122-125. Justice VOELKER, writing for the Court, observed that the "general rule" in Michigan had, until that time, been that a person who had not directly contracted with a manufacturer—and was therefore " 'not in privity' " —could not recover from the manufacturer for defective products under theories of either negligence or implied warranty. The "major concern" of the Court was whether, in that day and age, to uphold the trial court's "holding that the plaintiff is barred from her action by lack of privity of contract with defendant . . . ." *Id.* at 125. In other words, whether the lack of privity "insulat[ed the defendant] from all liability to plaintiff." *Id.* at 123.

Justice VOELKER observed that at that time, the cases on point were inconsistent and symptomatic of "try-[ing] vainly to wed the outmoded thinking and legal cliches of the past to the pressing realities of modern life." *Id.* at 129. Thus, "[a]ggrieved plaintiffs have scarcely known whether to sue in deceit or fraud or for negligence or breach of warranty—or indeed whether it was worthwhile to sue at all." *Id.* "Either lack of privity should always be a defense in these cases, or it never should be. The basically contractual notion of privity in this context has largely to do with the right of a party to *bring* his action against the person he seeks to hold, regardless of injury suffered." *Id.* at 129 (emphasis in original). Justice VOELKER further noted that the "doc-

trine of nonliability crept into our law from a casual
dictum in an English case decided in 1842 (which, to
add to the delightful irony, did not even involve a
manufacturer)," which American courts seized upon
and expanded "into a 'general rule' to relieve manufac-
turers of all liability," even after "the English in due
course sensibly scuttled their earlier dependence on this
old dictum . . . ." *Id.* at 132.

Our Supreme Court concluded that, following the
lead of *Carter v Yardley & Co Ltd*, 319 Mass 92; 64
NE2d 693 (1946), the "general rule" requiring a pur-
chaser to be in contractual privity to bring suit against
a manufacturer was unjust, unsound, out of touch with
modern-day realities, and in need of abandonment.
*Spence, supra* at 134-135.

Three years later, our Supreme Court revisited the
issue and it made even clearer the absurdity of applying
the outdated privity requirement in modern society and
the importance of a policy that recognized the current
economic realities. *Manzoni v Detroit Coca-Cola Bottling
Co*, 363 Mich 235; 109 NW2d 918 (1961). The Court
observed that warranty actions were "of ancient lineage"
and historically required privity of contract. *Id.* at 238.
However, that requirement was an anachronism left over
from "when many of our precedents began to take form"
in a day when "[s]ales were little more than neighborhood
trades" and products were "made under the very eyes of
the person who ultimately used it." *Id.* at 238-239. There-
fore, the privity requirement was an adaptation to condi-
tions largely free of intermediaries, vastly simpler than
the modern world and realistically inapplicable to it. *Id.* at
239-241.

In contrast, the *Manzoni* Court noted that modern
sales were nothing like the sales of the day in which the
privity requirement was adopted. Quoting extensively

from the supreme court of New Jersey, *Manzoni* explained that in an economy where manufacturers were no longer generally in privity with their products' users, " 'where the commodities sold are such that if defectively manufactured they will be dangerous to life or limb, then society's interests can only be protected by eliminating the requirement of privity between the maker and his dealers and the reasonably expected ultimate consumer.' " *Id.* at 240, quoting *Henningsen v Bloomfield Motors, Inc*, 32 NJ 358, 379; 161 A2d 69 (1960). The Court therefore concluded that the privity requirement, *as a prerequisite to bringing a warranty claim*, was an anachronism and inapplicable to the modern commercial world; rather than engage in "the use of fictions," many jurisdictions had therefore simply abandoned the privity requirement outright. *Manzoni, supra* at 241. The Court reiterated that Michigan permitted recovery under theories of negligence or breach of implied warranty. *Id.*

*Spence* and *Manzoni* were decided while the Uniform Sales Act was in effect in Michigan; the Uniform Sales Act was adopted in 1913, 1913 PA 100, and was replaced (along with other old uniform acts) with the Uniform Commercial Code in 1964. Critically, the Uniform Sales Act—and particularly § 69, 1948 CL 440.69—addressed the remedy of rescission, and it was merely "declaratory of the common law." *Rubin v Crowley, Milner & Co*, 214 Mich 365, 369; 183 NW 51 (1921); *Kirby v Gibson Refrigerator Co*, 274 Mich 395, 399; 264 NW 840 (1936); *Cova v Harley Davidson Motor Co*, 26 Mich App 602, 610-611; 182 NW2d 800 (1970). Moreover, our Supreme Court has explicitly stated that it has repudiated the privity-of-contract requirement for pursuing a warranty claim under the Uniform Sales Act. *Prentis v Yale Mfg Co*, 421 Mich 670, 682 n 9; 365 NW2d 176 (1984). It is clear that privity-of-contract was long ago elimi-

nated in Michigan as a prerequisite to bringing a suit, under the common law, seeking rescission on the theory of breach of implied warranty.[3]

Even after the UCC became effective in Michigan, our Supreme Court again recounted the history of the privity requirement in *Hill v Harbor Steel & Supply Corp*, 374 Mich 194; 132 NW2d 54 (1965). The Court observed that there had been "a time . . . when lack of privity of contract between plaintiff and defendant was a defense to a suit for breach of warranty," but that an exception had previously developed for foods, and that exception was made the rule in *Spence. Id.* at 201. The *Hill* Court provided two significant clarifications. First, that the *Spence* decision had erroneously implied that there was no distinction between a negligence action and an action alleging breach of implied warranty, when in fact the two actions were significantly different, the most important difference being that a plaintiff need not show a lack of due care to prevail under a warranty theory. *Id.* at 202-204. Second, although the *Manzoni* decision had involved a food product, the opinion itself had been general and intended to apply to all cases involving defective products. *Id.* at 204. Thus, even after the UCC was adopted, it was clear that at common law, in suits between purchasers and manufacturers, contractual privity remained discredited and abandoned as an anachronistic requirement that had no place in the modern world.

---

[3] The dissent quotes a quotation in *Lash v Allstate Ins Co*, 210 Mich App 98, 102; 532 NW2d 869 (1995), in support of the conclusion that rescission is definitionally unavailable here. We note that the quotation from *Lash* traces its lineage back to *Wall v Zynda*, 283 Mich 260, 264; 278 NW 66 (1938), a case that predates *Spence* by two decades. More importantly, *Wall* was not a consumer-goods case at all; rather, it was concerned with whether an action specifically seeking rescission *of a land contract* constituted an action founded upon a covenant in that contract.

Shortly after *Hill*, our Supreme Court reiterated that in a case involving an innocent bystander with no privity of any sort pursuing a breach-of-warranty claim against a manufacturer, "[t]he fact is that Michigan, for abundantly worthy reasons, has eliminated lack of privity as a defense to actions as at bar . . . ." *Piercefield v Remington Arms Co, Inc,* 375 Mich 85, 99; 133 NW2d 129 (1965).[4] Almost a decade later, our Supreme Court was asked to determine whether a third-party purchaser of property could recover from a title abstractor on the basis of a faulty abstract of title despite a lack of contractual privity between them. *Williams v Polgar,* 391 Mich 6, 9; 215 NW2d 149 (1974). Among other issues in the case, our Supreme Court again explained that it had "in categorical terms relieved Michigan jurisprudence of the restrictions of 'privity.' " *Id.* at 9-10, 15-18 (citing *Spence, supra*).

The parties and the trial court gave considerable attention to *Henderson*, and in particular *Henderson's* holding that the remedy of revocation of acceptance under the UCC was only available to purchasers against parties with whom they were in privity of contract. We hold that *Henderson* is not relevant to this case except to the extent that it reaffirms the fact that the statutory UCC remedy of revocation of acceptance is distinct from the common-law equitable remedy of rescission. *Henderson, supra* at 339-341; see also *Gauthier v Mayo,* 77 Mich App 513, 515; 258 NW2d 748 (1977). This is, of course, entirely proper: the UCC "keeps intact those areas of the common law not superseded by specific provisions of the UCC." *Huron Tool & Engineering Co*

---

[4] The remainder of the discussion concerned the possibility, which our Supreme Court declined to address at the time, that such a warranty case might be barred on the alternative basis that there was too great a causal distance between the injury and the defect. *Id.*

*v Precision Consulting Services, Inc*, 209 Mich App 365, 374; 532 NW2d 541 (1995); MCL 440.1102(2)(a) and 440.1103.

In *Henderson*, the plaintiff attempted to pursue a breach-of-contract action against a party with whom he did not have a contract. The *Henderson* Court discussed rescission only to explain that rescission was an equitable remedy distinct from the contractual remedy now provided for in the UCC. *Henderson, supra* at 340. The *Henderson* Court stated that warranty liability was an independent matter, and in that case it was irrelevant because the plaintiff had abandoned his warranty claims. *Id*. at 342-343. *Henderson* did not obviate the longstanding "principles of law and equity" in Michigan that the remedy of rescission is available for breach of implied warranty.[5] Indeed, the holding in *Henderson* was consistent with the reasoning behind our Supreme Court's explanation of the purpose behind the economic-loss doctrine: just as it would be inappropriate to recover on a tort theory for a breach of contract, it would be inappropriate to recover on a breach-of-warranty theory for a breach of a contract. The legal theory in a given case must be appropriate to the kind of wrong allegedly suffered.

In contrast to *Henderson*, plaintiff here actually pleaded alternative claims of "revocation of acceptance"

[5] Additionally, *Henderson* relied on an out-of-state case for the proposition that the UCC now provided for "revocation of acceptance" as a new remedy, distinct and different from "rescission"; in that case, the District Court of Appeal of Florida explicitly cautioned "that this does not alter a plaintiff's right to bring suit under a common law theory of rescission by pleading the traditional grounds for equitable relief." *Peppler v Kasual Kreations, Inc*, 416 So 2d 864, 865 n 1 (Fla App, 1982). Although an out-of-state case would not ordinarily be binding, we note it here simply because reliance thereon in *Henderson* further shows that it did not find rescission abolished in Michigan except with regard to the narrow field of breach-of-contract claims.

under the UCC and "rescission" in his complaint. However, it is clear that plaintiff's claims were based on defendant's alleged breach of implied warranty, *not* on a breach of contract. Moreover, the parties did not clearly differentiate "rescission" from "revocation," but they appeared to consider the primary remedy plaintiff pursued throughout this case to be equitable. As discussed earlier in this opinion, our concern is with the substance of a claim, irrespective of the labels applied by the parties. *Adams, supra* at 710-711. The substance of the claim that plaintiff pleaded and pursued here was a breach-of-warranty theory seeking the venerable equitable remedy of rescission. The UCC provides a remedy that applies in contract cases; nothing in the UCC revoked the remedy of rescission, nor did it in any way suggest that the important policy set forth by Justice VOELKER is no longer applicable to the way sales are conducted today.

We find additional support in the way in which this Court has treated the "economic-loss doctrine." Our Supreme Court described the doctrine as follows:

> The economic loss doctrine, simply stated, provides that " '[w]here a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only "economic" losses.' " This doctrine hinges on a distinction drawn between transactions involving the sale of goods for commercial purposes where economic expectations are protected by commercial and contract law, and those involving the sale of defective products to individual consumers who are injured in a manner which has traditionally been remedied by resort to the law of torts. [*Neibarger v Universal Coops, Inc*, 439 Mich 512, 520-521; 486 NW2d 612 (1992) (citations omitted).]

Our Supreme Court concluded that the economic-loss doctrine applied in Michigan, and, as a consequence, "where a plaintiff seeks to recover for economic loss

caused by a defective product *purchased for commercial purposes*, the exclusive remedy is provided by the UCC, including its statute of limitations." *Id.* at 527-528 (emphasis added). The economic-loss doctrine therefore was originally applicable only between sophisticated commercial parties of nominally equal knowledge and bargaining power; in other words, *businesses*. The purpose of the doctrine was to prevent a plaintiff from recovering in *tort* for a harm that was fundamentally *contractual*, unless the plaintiff had suffered an injury that was not solely economic. *Id.* at 527-529.

However, this Court extended the economic-loss doctrine to unsophisticated, individual purchasers, but only "where: (1) the parties or others closely related to them had the opportunity to negotiate the terms of the sale of the good or product causing the injury, and (2) their economic expectations can be satisfied by contractual remedies." *Quest Diagnostics, Inc v MCI WorldCom, Inc*, 254 Mich App 372, 380; 656 NW2d 858 (2002). In the absence of an actual transaction of some sort involving both parties, there was no way they could have bargained for terms with respect to each other, and therefore no way a contractual remedy could be available. *Id.* at 380-381. Most importantly, where this Court has applied the economic-loss doctrine in the absence of contractual privity, it did so because it found contractual privity irrelevant to the availability of a remedy for a breach of warranty. *Sullivan Industries, Inc v Double Seal Glass Co, Inc*, 192 Mich App 333, 342-343; 480 NW2d 623 (1991), quoting and adopting Chief Judge DANHOF's dissenting opinion in *Auto Owners Ins Co v Chrysler Corp*, 129 Mich App 38, 43-44; 341 NW2d 223 (1983). Chief Judge DANHOF had stated that "in a breach of warranty action it is unnecessary to establish vertical privity of contract between the manu-

facturer and purchaser . . . even where the loss is solely economic." *Id.* at 44 (DANHOF, C.J., dissenting), citing *Piercefield* and *Cova.*

The significance of the above discussion is that the UCC and the economic-loss doctrine apply to situations where the parties have some kind of contractual relationship with each other. No such contractual relationship existed here. The UCC and the economic-loss doctrine therefore simply do not apply.

Michigan law has, for half a century, unambiguously afforded the remedy of rescission to purchasers against remote, out-of-privity manufacturers on a theory of breach of implied warranty.[6] The Legislature's adoption of the UCC restricted the availability of that remedy only where the parties are, in fact, in contractual privity. In this case, plaintiff proceeded under theories of revocation of acceptance and rescission. For the reasons stated, he was clearly entitled to the verdict of rescission awarded by the trier of fact.

We affirm the trial court's primary grant of judgment in plaintiff's favor under the MMWA because rescission is an available remedy in this case under Michigan law. We clarify that, given the substance of plaintiff's action, the judgment was clearly based on the remedy of rescission for a breach of implied warranty, even if it

---

[6] This theory is incompatible with much of our dissenting colleague's concerns about possibly unlimited liability. Under an implied-warranty theory, a plaintiff—whether an immediate purchaser or a purchaser many intermediate owners removed—must in any event prove that there had been a defect in the product *when it left the manufacturer's control*, especially where that product requires regular maintenance, is expected to undergo wear, or where "the product has provided defect-free serviceability for a reasonable period of time." *Kupkowski v Avis Ford, Inc,* 395 Mich 155, 166; 235 NW2d 324 (1975). Furthermore, at an obvious minimum, the time constraints are provided by applicable statutes of limitations.

was not characterized as such. In light of our decision, we decline to consider the merits and arguments concerning alternative judgments.

Owens, P.J., concurred.

Bandstra, J. (*dissenting*). I respectfully but heartily dissent from the majority's conclusion that Michigan law allows a person to rescind a contract even though that person never contracted with the person against whom the rescission remedy is imposed. That conclusion is without precedent, contrary to the only precedent on point, illogical, and apparently limitless in its application.

I agree with the majority that, before *Spence v Three Rivers Builders & Masonry Supply, Inc,* 353 Mich 120; 90 NW2d 873 (1958), there was a general rule preventing a person who purchased a good through a middleman from seeking any recovery whatsoever from the manufacturer of that good, because of the privity requirement. *Spence* and its progeny allowed such purchasers to seek *damages* from manufacturers even though there was no privity of contract. However, the majority cites no Michigan case where a rescission remedy was imposed in this context. Thus, *Spence* and its progeny did not abrogate the general rule requiring privity in a rescission case; that general rule still stands.

That conclusion comports with the only Michigan precedent where an out-of-privity plaintiff sought to return a good to a manufacturer, *Henderson v Chrysler Corp,* 191 Mich App 337; 477 NW2d 505 (1991). *Henderson* rejected that attempt under the UCC's revocation of acceptance provisions, MCL 440.2608. *Henderson, supra* at 340. *Henderson* noted that the "UCC no longer provides for rescission, but rather *substitutes* revocation

of acceptance" instead. *Id.* (emphasis added); see also *Watts v Mercedes-Benz USA, LLC*, 2007 Tenn App LEXIS 580 at 6; 63 UCC Rep Serv 2d 966 at 2 (Tenn App, 2007), quoting *Haverlah v Memphis-Aviation, Inc*, 674 SW2d 297, 302 (Tenn App, 1984) ("the UCC remedy of revocation of acceptance 'for all practical effect replaces the old equitable doctrine of rescission' "); *Ramirez v Autosport*, 88 NJ 277, 288; 440 A2d 1345 (1982) ("[t]he Code eschews the word 'rescission' and substitutes . . . 'revocation of acceptance' "). It would be pointless to allow a plaintiff to avoid the privity requirement imposed by the UCC as a prerequisite to revocation simply by asking for rescission instead.[1] I agree with *Henderson* that the enactment of the revocation-of-acceptance provisions of the UCC here in Michigan constitutes a repudiation of rescission as a remedy for an out-of-privity plaintiff.

The majority does not explain how a contract can be rescinded when there was no contract in the first place. The purpose of the rescission remedy is " 'to annul the contract and restore the parties to the relative positions which they would have occupied if no such contract had ever been made.' " *Lash v Allstate Ins Co*, 210 Mich App 98, 102; 532 NW2d 869 (1995), quoting *Cunningham v Citizens Ins Co of America*, 133 Mich App 471, 479; 350 NW2d 283 (1984). There was no contract involving plaintiff and Forest River, Inc.; Forest River's sale was to Kitsmiller RV and plaintiff's purchase was from Kitsmiller RV.[2] Thus, there is no contract involving

---

[1] And, of course, the other statutory prerequisites to revocation of acceptance—that the goods' nonconformity substantially impairs their value, that the purchaser did not discover the nonconformity before acceptance, that notice of revocation occurs within a reasonable time, and so forth—are avoided as well. See MCL 440.2608.

[2] Accordingly, plaintiff correctly pursued a revocation of acceptance claim against Kitsmiller RV. Plaintiff chose to forgo any revocation

Forest River and plaintiff to "annul" and no precontract "relative positions" to which these parties can be returned. The majority speaks of "rescission on the theory of breach of implied warranty," *ante* at 86, but the contract plaintiff seeks to rescind is not that arising from Forest River's implied warranty. Instead, plaintiff seeks to rescind a sale and, again, plain and simply, no sale involving plaintiff and Forest River exists.

Finally, the majority's decision today has no apparent limitation. Had plaintiff resold the RV to his neighbor, for example, nothing in the majority's opinion suggests that the neighbor could not seek rescission against Forest River. Durable goods are continually resold in our society and the ramifications of the majority's decision seem endless. This case involved just one intermediate purchaser, but the logic of the majority's analysis would apply no matter how many resales occurred. Nor would there be any limitation with regard to the time that has passed since goods left the manufacturer's control. Compare MCL 440.2608(2) ("reasonable time" requirement for revocation of acceptance under the UCC).

The trial court granted alternative remedies of rescission and money damages to plaintiff. Only money damages are appropriate because there was no contract between plaintiff and Forest River to rescind. I would reverse the trial court's order to the extent that it ruled otherwise.

---

remedy by settling with Kitsmiller RV. That, of course, does nothing to give rise to a similar claim against Forest River.