# STATE OF MICHIGAN

# COURT OF APPEALS

KOVIACK IRRIGATION AND FARM
SERVICES, INC.,

        Plaintiff/Counter-Defendant-
        Appellant,

v

MAPLE ROW FARMS, LLC,

        Defendant/Counter-Plaintiff-
        Appellee.

UNPUBLISHED
September 21, 2017

Nos. 331327; 331445
Lenawee Circuit Court
LC No. 14-005177-CK

Before: BECKERING, P.J., and MARKEY and RIORDAN, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's judgment in favor of defendant, following a bench trial. The court determined that defendant was not liable to plaintiff for the cost of equipment that plaintiff supplied for defendant's irrigation system because defendant properly rejected the equipment under the Uniform Commercial Code (UCC), MCL 440.1101 *et seq*. The court ordered defendant to return the equipment to plaintiff at defendant's own expense. Plaintiff also appeals the trial court's award of case evaluation sanctions of $11,362.50. We affirm in both appeals.

Plaintiff sold defendant component parts for an irrigation system for defendant's farm, which included a pump for distributing water from a retention pond. Plaintiff also helped design and install the system. Because the pump was delivered late in the harvest season, defendant waited until the following spring to install it. At that time, plaintiff was unwilling to assist in installing the pump because defendant had not paid for it or its operating panel. Defendant was unwilling to pay for the pump and panel until they were installed, and defendant could confirm that they would work as intended with the irrigation system. Defendant therefore hired another irrigation specialist to install the pump; he was then advised that the pump would not work with defendant's retention pond. Defendant then purchased another type of pump that was compatible with its retention pond and irrigation system. Plaintiff sued defendant for breach of contract, account stated, and unjust enrichment. Defendant filed a counterclaim, alleging that plaintiff had not provided a proper pump for the irrigation system, and that plaintiff refused to correct the problem. Following a two-day bench trial, the trial court found that defendant properly rejected

-1-

the pump and its panel; consequently, plaintiff was not entitled to recover the costs of those items under the parties' agreement. The court ordered defendant to return the goods at its own expense.

## I. REJECTION OF GOODS

Plaintiff argues that the trial court erred in ruling that defendant properly rejected the pump and operating panel under the UCC.

This Court reviews a trial court's findings of fact for clear error, MCR 2.613(C), and its conclusions of law are reviewed de novo. *Trahey v City of Inkster*, 311 Mich App 582, 593; 876 NW2d 582 (2015). A finding of fact is clearly erroneous if there is no evidentiary support for it or this Court is left with a definite and firm conviction that a mistake has been made. *Id*. Regard is given to the trial court's special opportunity to judge the credibility of the witnesses who appeared before it. MCR 2.613(C).

Preliminarily, we disagree with plaintiff's argument that defendant should not have been permitted to rely on a rejection of goods theory because defendant never raised that defense as an affirmative defense. Plaintiff is correct that defendant did not raise this issue as an affirmative defense to plaintiff's claims. Defendant, however, filed a counter complaint that alleged that plaintiff had not provided the proper equipment, which plaintiff refused to correct, so defendant obtained another pump. Because defendant raised its rejection-of-goods arguments in its countercomplaint, which the trial court was required to address, there is no merit to plaintiff's suggestion that the trial court erred by considering that theory at trial.

The trial court ruled that defendant properly rejected the pump and its operating panel in the spring of 2014 and, therefore, was not liable for the cost of that equipment under the parties' contract. MCL 440.2602(1) provides, in relevant part:

> (1) Rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller.
>
> (2) Subject to the provisions of the 2 following sections on rejected goods (sections 2603 and 2604),
>
> (a) after rejection any exercise of ownership by the buyer with respect to any commercial unit is wrongful as against the seller; and
>
> (b) if the buyer has before rejection taken physical possession of goods in which he does not have a security interest under the provisions of this article (subsection (3) of section 2711), he is under a duty after rejection to hold them with reasonable care at the seller's disposition for a time sufficient to permit the seller to remove them; but
>
> (c) the buyer has no further obligations with regard to goods rightfully rejected.

Plaintiff first argues that defendant did not timely reject the pump. Where goods are rejected, what constitutes a reasonable time to act depends on the nature, purpose, and circumstances of the case. See MCL 440.1205(1); *Kelynack v Yamaha Motor Corp, USA*, 152 Mich App 105, 113; 394 NW2d 17 (1986). Where the product at issue involves goods of a complex nature and the buyer depends on the seller's expertise that the goods will perform properly for the intended use, a buyer has an opportunity to put those goods to use or to test the goods before determining whether the goods conform to the contract. See *Capitol Dodge Sales, Inc v Northern Concrete Pipe, Inc*, 131 Mich App 149, 157-158; 346 NW2d 535 (1983).

In this case, the pump was delivered late in the harvest season, so it could not be put to use right away. Also, some installation work still needed to be performed, such as hooking it up to the electrical system to see if it would work. Under the circumstances, it was reasonable for defendant to wait until the pump was actually installed to see if it would work before deciding whether to reject it, particularly considering that defendant relied on plaintiff's expertise in selecting a pump appropriate for its intended use. The trial court did not clearly err in finding that defendant rejected the goods within a reasonable time when it determined the following spring that the pump was not appropriate for defendant's irrigation system. During the interim period, the pump sat in its original packaging until it could be installed to determine if it would work as intended for defendant's purposes.

Plaintiff also argues that defendant did not actually reject the pump because it did not formally give notice that it was rejecting the pump. We disagree. Again, the reasonableness of defendant's action depends on the nature, purpose, and circumstances of the case. See MCL 440.1205(1).

Plaintiff's salesman, Anthony Belcher, met with defendant's owner, Dean McClenathen, in April 2014 to inquire about defendant's intention to pay for the pump. Belcher agreed that McClenathen told him that he did not intend to pay for anything more until he saw that the irrigation system would work as planned. Belcher admitted that the pump and panel were still in their original packaging at that time; however, plaintiff's owner, Terry Koviack, refused to do any more work on the project until defendant paid for the equipment. At that point, plaintiff was on notice that defendant intended to reject the pump if it would not work as planned. When Koviack refused to do any further work to assist in installing the pump, defendant reasonably took steps to follow through with the parties' agreement by hiring another irrigation specialist, Mark Ackerman, to install the pump. Ackerman informed defendant that because the pump was not appropriate for defendant's retention pond and irrigation system, it would not work as intended. At that time, defendant had grounds to reject the pump and panel. According to the evidence, however, plaintiff had ceased communications with defendant. While defendant could have more effectively conveyed to plaintiff its reasons for rejecting the pump, such as send a letter or email, given that plaintiff had refused to further communicate with defendant or perform any more work on the project, defendant's failure to take more formal steps to communicate its rejection was not unreasonable. See, e.g., *Fargo Machine & Tool Co v Kearney & Trecker Corp*, 428 F Supp 364, 375 (ED Mich, 1977). It is apparent that plaintiff had notice that defendant would not accept the pump until it was determined that it would work as intended, and defendant had agreed to pay for it when it was installed and properly working. This evidence

supports that plaintiff had notice of defendant's intent to reject the pump if it were to not work as intended, and Ackerman's testimony supports that the pump was not suitable for defendant's intended purposes.

Accordingly, the trial court did not err in finding that under these circumstances defendant properly rejected the pump and panel in a reasonably timely manner.

Although the parties also address whether there was a proper revocation of acceptance of the pump and operation panel by defendant, see MCL 440.2608, we note that the trial court did not address or decide that issue. Because we conclude that the trial court did not err in ruling that defendant properly rejected the goods, we likewise conclude that it is not necessary to decide that issue.

## II. CASE EVALUATION SANCTIONS

### A. EQUITABLE RELIEF

The case evaluation panel awarded plaintiff $10,000 and the pump. Plaintiff rejected that award. Plaintiff argues that defendant was not entitled to case evaluation sanctions because the portion of the award requiring that the pump be returned constituted an improper award of equitable relief contrary to MCR 2.403(K)(3). Whether the trial court properly applied MCR 2.403(K)(3) and determined that defendant was entitled to case evaluation sanctions are questions of law, which we review de novo. *Van Elslander v Thomas Sebold & Assoc, Inc*, 297 Mich App 204, 211; 823 NW2d 843 (2012).

MCR 2.403(K)(3) provides:

> The evaluation may not include a separate award on any claim for equitable relief, but the panel may consider such claims in determining the amount of an award.

Plaintiff's claims against defendant were for breach of contract, account stated, and unjust enrichment. Only unjust enrichment is considered an equitable claim. See *AFT Mich v Michigan*, 303 Mich App 651, 677; 846 NW2d 583 (2014) (2015) (unjust enrichment is an equitable theory and is the equitable counterpart of a legal claim for breach of contract). Plaintiff requested money damages for all of its claims.

We are not persuaded that the case evaluation panel's award of the pump to plaintiff amounts to an award of equitable relief. In *Forest City Enterprises, Inc v Leemon Oil Co*, 228 Mich App 57, 79; 577 NW2d 150 (1998), this Court explained that the term "equitable relief" in MCR 2.403(O) is not synonymous with an equitable issue. This Court clarified that "equitable relief" is defined by Black's Law Dictionary (5th ed), p 484, as "[t]hat species of relief sought in a court with equity powers as, for example, in the case of one seeking an injunction or specific performance instead of money damages." *Forest City*, 228 Mich App at 79. This Court held that a claim involving an equitable apportionment did not mean that the award that issued was for equitable relief, but rather was still a monetary award. *Id.* at 80.

-4-

This case involves claims under the UCC, and the trial court ultimately found that defendant had rejected the pump under the UCC, which meant that plaintiff was entitled to have the pump returned. The UCC was adopted to replace traditional equitable forms of relief, such as the common-law equitable remedy of rescission. The UCC now provides contractual remedies, such as revocation of acceptance, which is distinct from rescission. See *Davis v Forest River, Inc*, 278 Mich App 76, 87; 748 NW2d 887 (2008), vac on other grounds 485 Mich 941 (2009). The provisions of the UCC are now only supplemented by other principles of law and equity. MCL 440.1103. Rejection of goods and revocation of acceptance under the UCC are statutory remedies and, unlike rescission, are not based on the discretion of the court. A remedy under the UCC is classified as an action at law, not equity. *Henderson v Chrysler Corp*, 191 Mich App 337, 341; 477 NW2d 505 (1991). Accordingly, relief under the UCC, including the return of property subject to either rejection or revocation, involves a legal remedy, not an equitable one. See *Davis*, 278 Mich App at 89. While specific performance is a form of equitable relief, the case evaluation panel did not order specific performance of the parties' agreement by awarding plaintiff the pump. The case evaluation award for the return of the pump to plaintiff is consistent with the UCC; therefore, it should not be considered a separate award of equitable relief. Accordingly, the case evaluation award did not violate MCR 2.403(K)(3).

## B. MORE FAVORABLE VERDICT

We also reject plaintiff's argument that defendant was not entitled to case evaluation sanctions because the trial court's verdict was more favorable to plaintiff than the case evaluation award. We review de novo whether the trial court properly determined that defendant was entitled to case evaluation sanctions. *Van Elslander*, 297 Mich App at 211.

Plaintiff relies on MCR 2.403(O)(5), which provides:

> (5) If the verdict awards equitable relief, costs may be awarded if the court determines that
>
> (a) taking into account both monetary relief (adjusted as provided in subrule [O][3]) and equitable relief, the verdict is not more favorable to the rejecting party than the evaluation, or, in situations where both parties have rejected the evaluation, the verdict in favor of the party seeking costs is more favorable than the case evaluation, and
>
> (b) it is fair to award costs under all of the circumstances.

The case evaluation panel awarded plaintiff $10,000 and return of the pump. Plaintiff rejected that award. At trial, the trial court did not award plaintiff any money damages, but ordered defendant to return the pump and its operation panel to plaintiff. Plaintiff now argues that based on the trial court's "equitable relief" (return of the pump and the operation panel), it received a more favorable verdict at trial. Thus, the trial court erred in awarding defendant case evaluation sanctions.

Initially, we conclude that plaintiff's reliance on MCR 2.403(O)(5) is misplaced. The trial court did not actually award any equitable relief because, as discussed earlier, return of the

equipment was a remedy under the UCC. As such, it was not equitable in nature. Furthermore, even if MCR 2.403(O)(5) is used as a guide for purposes of evaluating the trial court's verdict, we are not persuaded that plaintiff received a more favorable verdict at trial.

Plaintiff's argument is based on its understanding of the case evaluation award as encompassing only the return of the pump, exclusive of its operation panel. Although plaintiff separately billed defendant for the pump and the operation panel, and the case evaluation award referred only to return of the pump, the intended purpose of the operation panel was to operate the pump. Both items were worthless to defendant, either separately or together. Because the operation panel was made specifically for use with the pump and was not intended as a stand-alone product, the case evaluation panel's award of return of the pump should be understood as also encompassing the operation panel.

Because plaintiff rejected the case evaluation award and defendant accepted it, defendant was entitled to sanctions unless plaintiff obtained a verdict that was at least 10 percent more favorable than the value of the case evaluation award. MCR 2.403(O)(1) and (3). Comparing the case evaluation award to the trial court's verdict, it is apparent that plaintiff did not receive a verdict that was at least 10 percent more favorable than the case evaluation award. The case evaluation panel awarded plaintiff $10,000 and return of the pump, which should be understood as encompassing return of the operation panel, a component that was necessary to operate the pump. The trial court ordered defendant to return the equipment to plaintiff, relief plaintiff would have obtained if it had accepted the case evaluation award, but it did not award plaintiff any money damages. Under these circumstances, the trial court did not err in ruling that plaintiff did not receive a more favorable verdict at trial.

## C. AMOUNT OF THE CASE EVALUATION SANCTIONS

Plaintiff also challenges the amount of the case evaluation sanctions the trial court ordered, $11,362.50. We review a trial court's determination of an appropriate award of case evaluation sanctions for an abuse of discretion. *Van Elslander*, 297 Mich App at 211. An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes. *Id.*

Under MCR 2.403(O)(1), the party who rejected the case evaluation award and did not improve its position at trial is liable to pay the opposing party's actual costs, which are defined in MCR 2.403(O)(6)(b) as including

> a reasonable attorney fee based on a reasonable hourly or daily rate as determined by the trial judge for services necessitated by the rejection of the case evaluation, which may include legal services provided by attorneys representing themselves or the entity for whom they work, including the time and labor of any legal assistant as defined by MCR 2.626.

Defendant had the burden of proving the reasonableness of its requested fees. *Van Elslander*, 297 Mich App at 228.

To determine reasonable attorney fees necessitated by the rejection of a case evaluation award, the trial court is required to apply the guidelines from *Smith v Khouri*, 481 Mich 519, 537; 751 NW2d 472 (2008), in which the Court stated:

> [A] trial court should first determine the fee customarily charged in the locality for similar legal services. In general, the court shall make this determination using reliable surveys or other credible evidence. Then, the court should multiply that amount by the reasonable number of hours expended in the case. The court may consider making adjustments up or down to this base number in light of the other factors listed in *Wood* [*v Detroit Auto Inter-Ins Exch*, 413 Mich 573; 321 NW2d 653 (1982)] and MRPC 1.5(a). In order to aid appellate review, the court should briefly indicate its view of each of the factors.

Plaintiff's objections were limited to the reasonableness of the number of hours expended by defense counsel and the defense expert in this case. Defense counsel billed for 18 hours of pretrial work on this case. Although plaintiff argues that this reported time is inflated, defense counsel pointed out below that plaintiff's counsel reported 18.1 hours of pretrial work on the case. Plaintiff's counsel responded that his reported time included seven hours of travel time because he was not a local attorney, but even discounting the seven hours of travel time, the fact remains that the pretrial hours plaintiff's counsel reported and those defendant's counsel claimed were essentially the same. The trial court was justified in relying on that similarity to reject plaintiff's argument that defendant's reported time was inflated and to find that defendant's reported hours were reasonable.

Plaintiff also complains that defense counsel improperly billed 2.25 hours for a 15-minute conference, but defense counsel conceded this error, and it was not reflected in the total number of hours billed. Therefore, this argument does not entitle plaintiff to relief.

While plaintiff complains that defense counsel simply repackaged the case evaluation summary as defendant's trial brief, so he should not have billed four hours for that brief, it was not an abuse of discretion for the trial court to find that the four hours billed were reasonable. Converting the case evaluation summary into the defense's trial brief required counsel to conduct additional review of the case to ensure that the trial brief was accurate, even if it essentially mirrored its case evaluation summary.

Plaintiff also challenges an hour that defense counsel billed for the case evaluation hearing because that amount was billed before the hearing was held. That item appears to be for case evaluation preparations, and we are not persuaded that one hour is unreasonable considering the overall amount of fees charged by defense counsel.

Plaintiff also challenges the costs charged by defendant's expert witness, Mark Ackerman, and objects to his charge of 16 hours for research related to the pumps and irrigation systems and for two visits to defendant's farm. Plaintiff contends that Ackerman should have been familiar with this operation because he installed the pump that defendant ultimately purchased. However, the amounts charged ($750 for two visits, and $800 for 16 hours of research) do not appear to be excessive or unreasonable on their face. In addition, plaintiff has not shown that Ackerman's work was unnecessary.

In sum, plaintiff has not shown that the trial court abused its discretion by awarding case evaluation sanctions of $11,362.50.

We affirm.  As the prevailing party, defendant may tax costs pursuant to MCR 7.219.

/s/ Jane M. Beckering
/s/ Jane E. Markey
/s/ Michael J. Riordan