Joseph MURPHY, et al., Plaintiffs,

v.

THE PROCTOR & GAMBLE COMPANY, Defendant.

Civil No. 08–15170.

United States District Court, E.D. Michigan, Southern Division.

March 9, 2010.

Mark K. Wasvary, Becker and Wasvary, Troy, MI, for Plaintiffs.

Benjamin W. Jeffers, Dykema Gossett, Detroit, MI, Daniel J. Stephenson, Stephen C. Borgsdorf, Dykema Gossett, Ann Arbor, MI, for Defendant.

## ORDER ADOPTING REPORT AND RECOMMENDATION

JOHN FEIKENS, District Judge.

This matter is before the Court on Plaintiffs' Objections (Dkt. 25) to Magistrate Judge Whalen's Report and Recommendation (Dkt. 24) concerning Defendant's Motion to Dismiss Counts II and III of the First Amended Class Action Complaint (Dkt. 18). Magistrate Judge Whalen's Report recommends that Defendant's Motion be granted, and that Count II (common-law fraud) and Count III (silent fraud) of the Plaintiffs' Complaint be dismissed.

Plaintiffs filed timely Objections to the Report, Defendant filed a Response to Plaintiffs' Objections, and Plaintiffs filed a Reply (Dkt. 25–27). Where, as here, a party has objected to portions of a Report and Recommendation, the Court reviews those portions *de novo.* 28 U.S.C. § 636(b)(1)(C); Fed.R.Civ.P. 72(b)(3). *De novo* review in these circumstances requires at least a review of the evidence before the Magistrate Judge; the Court may not act solely on the basis of the Magistrate Judge's Report. *Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir.1981). After reviewing the evidence, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations" of the Magistrate Judge. 28 U.S.C. § 636(b)(1)(C).

Generally, this case is a proposed class action involving certain razor blade cartridges manufactured and marketed by Defendant, Proctor & Gamble. The named Plaintiffs are residents of six different states, including Michigan, Ohio, Pennsylvania, Florida, Illinois, and California. Defendant manufactures and markets two different razor-blade handles: the Fusion and the Fusion Power. To differentiate it from the Fusion handle, the Fusion Power handle houses a battery, causing the blade to vibrate and theoretically improving the performance of the attached blade. Defendant also produces and markets two different blades to be used with the Fusion handle systems. One is designated as a Fusion cartridge, the other a Fusion Power cartridge. Plaintiffs claim the Power cartridges cost about $1.00 more for a

package of four blades. The Plaintiffs argue that the packaging of the Fusion Power cartridges leads consumers to believe that they are related to, and must be used with, the Fusion Power handles, but that in fact there is no difference between the blades.[1]

Count I of Plaintiffs' First Amended Complaint alleges violations of state consumer protection statutes; Count IV seeks injunctive relief. Those counts are not at issue in this Motion. Counts II and III allege state-law claims of common-law fraud and silent fraud, respectively. Defendant seeks dismissal of those counts under Fed.R.Civ.P. 12(b)(6).

In his Report, Magistrate Judge Whalen thoroughly and correctly analyzed Michigan law, which provides: (1) the economic-loss doctrine bars tort claims for "purely economic losses arising out of the quality of ... products" because those claims arise out of contract and are governed by the UCC (Report at 606, citing *Neibarger v. Universal Cooperatives, Inc.*, 439 Mich. 512, 486 N.W.2d 612, 615 (1992)); (2) the economic-loss doctrine applies to consumer transactions, and does not require direct privity between the plaintiff (consumer) and the defendant (manufacturer) (Report at 606–07, citing *Davis v. Forest River, Inc.*, 485 Mich. 941, 774 N.W.2d 327 (2009); *Sherman v. Sea Ray Boats, Inc.*, 251 Mich. App. 41, 649 N.W.2d 783, 788 (2002); *Farm Bureau Ins. v. Deere Co.*, Case No. 1:08–CV–922, 2009 WL 104139, *2 (W.D.Mich. Jan. 14, 2009)); and (3) Michigan recognizes a fraud-in-the-inducement exception to the economic-loss doctrine, but only if the alleged misrepresentation does not concern "the quality or character of the goods sold" (Report at 607–08, citing *Huron Tool and Engineering Co. v. Precision Consulting Svcs., Inc.*, 209 Mich.App.

365, 532 N.W.2d 541 (1995)). Magistrate Judge Whalen then correctly concluded that, "[i]n this case, the Plaintiffs' fraud claims are ... inextricably related to the nature of the product [and] [t]he only damages are economic." Therefore, Magistrate Judge Whalen recommended dismissal of Counts II and III of Plaintiffs' Complaint.

Plaintiffs' first objection argues that Magistrate Judge Whalen "did not address ... [Plaintiffs'] argument ... that fraud is still applicable under the UCC, but the damages are limited to only economic loss." Plaintiffs primarily rely on UCC § 1.103(b), which states in relevant part that "[u]nless displaced by the particular provisions of [the UCC], the principles of law and equity, including ... fraud, [and] misrepresentation ... supplement its provisions." Plaintiffs cite no case law for the proposition that this provision of the UCC "saves" their fraud claims. Moreover, as Defendant correctly notes, the Michigan Court of Appeals specifically addressed—and rejected—Plaintiffs' argument in *Huron Tool*, 532 N.W.2d at 545–46 (reasoning that the economic-loss doctrine applies because "[t]he body of common law sought to be preserved by [UCC § 1.103(b) ] is the same body of law in which the economic loss doctrine arose."). Therefore, under Michigan law, Plaintiffs' first objection is without merit, and is therefore OVERRULED.

Plaintiffs' second objection argues that the "fraudulent-inducement" exception under *Huron Tool* applies to save their claims, or, alternatively, the economic-loss doctrine limits their remedies to those available under contract law but does not require dismissal of their claims. *See* Objection at 8–9 ("*Huron Tool* made the deci-

---

**1.** Plaintiffs acknowledge that the back of the packaging reveals that both cartridges can be used with either handle.

sion it did because the Court of Appeals therein could see that essentially the fraudulent inducement claim was masking what was an Economic Loss claim under a warranty theory."); *id.* at 6 ("the Economic Loss Doctrine on fraud simply limits the claim for damages to economic contract damages"); *id.* at 8 ("It is to be noted that [*Huron Tool*] was not a no cause, but rather was a restriction to the remedies available under contract law. Accordingly the Magistrate went beyond *Huron Tool.*"); *id.* at 13 ("The Economic Loss Doctrine does not eliminate a claim for the matters set forth in the counts regarding silent fraud and intentional fraud. Rather it shifts the remedy into a breach of contract remedy...."). Importantly, in *Huron Tool*, the plaintiff brought claims for breach of contract and warranty in addition to its fraud and misrepresentation claims. After having determined that the economic-loss doctrine *barred* the plaintiff's fraud and misrepresentation claims, the Court of Appeals reviewed the lower court's determination that the contract claim was barred by the statute of limitations period. The Court of Appeals determined that there was a material factual dispute about the date on which the plaintiff's contract claim accrued, and reversed the dismissal of that claim accordingly. In this case, Plaintiffs have not filed breach of contract or warranty claims.[2] Moreover, although Plaintiffs appear to acknowledge that a breach of contract claim "masked" as a fraudulent-inducement claim is barred by the economic-loss doctrine (*id.* at 9), they have failed to distinguish their claim from such masked-contract claims.. Ac-

cordingly, Plaintiffs' second objection is OVERRULED.

█ Plaintiffs' third objection is that, even if *Huron Tool* cannot be distinguished, the Michigan Supreme Court *sub silentio* reversed the *Huron Tool* holding in the case of *Cooper v. Auto Club Ins. Association,* 481 Mich. 399, 751 N.W.2d 443 (2008). It is well established that a party may not raise an argument, advance a theory, or marshal evidence before a District Judge that was not fairly presented to the Magistrate Judge. *Murr v. United States,* 200 F.3d 895, 902 n. 1 (6th Cir.2000). Although the *Cooper* case was decided before the briefing on Defendant's Motion to Dismiss, Plaintiffs failed to raise this argument in their opposition to that Motion. I find that Plaintiffs' failure to raise this argument before the Magistrate Judge constitutes a waiver, and the Court will not now consider it. Accordingly, Plaintiffs' third objection is OVERRULED.

Plaintiffs' fourth objection is that even if Michigan Law applies to bar the *Michigan–Plaintiffs'* claims, "[o]ther state laws that are subject to this litigation include Florida, California, Illinois, Ohio and Pennsylvania[, and] *Huron Tool'* s analysis in other states has not been universally accepted and, in fact, to the contrary represents a minority opinion." Again, Plaintiffs failed to raise this argument in their Response to Defendant's Motion, and have therefore waived it.[3] Plaintiffs' fourth objection is therefore OVERRULED.

---

2. Nor have Plaintiffs cited any law supporting their suggestion that their tort claims remain viable, with remedies limited to the "benefit of the bargain" damages available under contract law.

3. Although Plaintiffs' Response to Defendant's Motion did address each State's standard of

proof for fraud and silent fraud claims (generally, whether reliance must be specifically pled or proven in each State), Plaintiffs failed to raise the nuances of the economic-loss doctrine in each relevant State until filing their objections to the Report.

## CONCLUSION

For the reasons set forth above, and having thoroughly reviewed the Report, Plaintiffs' Objections, Defendant's Response, Plaintiffs' Reply, and the relevant law, I agree with Magistrate Judge Whalen's conclusion that the economic-loss doctrine bars Plaintiffs' claims for fraud (Count II) and silent fraud (Count III). Accordingly, I OVERRULE Plaintiffs' Objections, ADOPT Magistrate Judge Whalen's Report and Recommendation, GRANT Defendant's Motion to Dismiss, and DISMISS Counts II and III of Plaintiffs' First Amended Class Action Complaint.

**IT IS SO ORDERED.**

## REPORT AND RECOMMENDATION

R. STEVEN WHALEN, United States Magistrate Judge.

Before the Court is Defendant's Motion to Dismiss Counts II and III of the First Amended Class Action Complaint [Docket # 18], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Because these claims are barred by the economic loss doctrine, I recommend that the Defendant's motion be GRANTED, and that Count II (common law fraud) and Count III (silent fraud) of the Plaintiffs' complaint be DISMISSED.

### I. BACKGROUND

On its face, this case is about razor blades. Proctor & Gamble ("P & G") manufactures and markets a wide range of consumer good, including the Gillette brand razors and razor blades. P & G produces two straight razor blade handles marketed under the name "Gillette Fusion." Both utilize five razor blades in one cartridge. One handle, the "Fusion Power Handle," houses a battery that causes the attached blade cartridge to vibrate; the other, the "Fusion Handle," is not battery operated.

P & G also produces and markets two different blades to be used with the Fusion Handle systems. One is designated the Fusion Power cartridge, and the other is simply called a Fusion cartridge. The Fusion Power cartridges cost about $1.00 more for a package of four cartridges. The Plaintiffs allege that the packaging of the Fusion Power cartridges lead consumers to believe that they are related to and must be used with the Fusion Power handles, but that in fact, there is no difference between the blades. The Plaintiffs contend that this deception "exemplif[ies] the corporate greed and moral decay that seems to have taken hold in the USA Corporate World and which is now the subject matter of attack by the American people." *Answer to Defendant's Motion to Dismiss*, p. 6.

Count I of the First Amended Complaint alleges violation of state consumer protection statutes, and Count IV seeks injunctive relief. Those counts are not at issue in this motion. Counts II and III allege state law claims of common law fraud and silent fraud, respectively. Defendant seeks dismissal of those claims under Fed.R.Civ.P. 12(b)(6).

### II. STANDARD OF REVIEW

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." Rule 12(b) also provides that if, on consideration of a motion under paragraph (6), "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 (summary judgment)." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as

a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir.2001).

In two recent cases, the United States Supreme Court altered the standard for determining whether a complaint is subject to dismissal under Fed.R.Civ.P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Court, construing the requirements of Fed.R.Civ.P. 8(a)(2),[1] held that although a complaint need not contain detailed factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true." *Id.*, 127 S.Ct. at 1964–65 (internal citations and quotation marks omitted). Further, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (Internal citations and quotation marks omitted). *See also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio* 502 F.3d 545, 548 (6th Cir.2007). Stated differently, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, at 1974.

In *Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the Court explained and expanded on what it termed the "two-pronged approach" of *Twombly*.[2] First, it must be determined whether a complaint contains factual allegations, as opposed to legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, 129 S.Ct. at 1949, citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. Second, the facts that are pled must show a "plausible" claim for

relief, which the Court described as follows:

> "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'shown[n]'-'that the pleader is entitled to relief.'" 129 S.Ct. at 1950(Internal citations omitted).

### III. DISCUSSION

 The Defendant raises a number of arguments in support of dismissal, but one is dispositive as a matter of law, and that is the economic loss doctrine.

In *Neibarger v. Universal Cooperatives, Inc.*, 439 Mich. 512, 486 N.W.2d 612, 615 (1992), the Michigan Supreme Court explained the economic loss doctrine as follows:

> "The economic loss doctrine, simply stated, provides that " '[w]here a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic' losses.'" This doctrine hinges on a distinction drawn between transactions involving the sale of goods for commercial purposes where economic expectations are protected by commercial and contract law, and those involving the sale of defective products to individual consumers who are injured in a manner which has traditionally been

---

1. Rule 8(a)(2) provides that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

2. *Twombly* was an antitrust case. *Iqbal* was a prisoner civil rights case. In any event, it is clear that the *Iqbal* standard is applicable to all 12(b)(6) motions.

remedied by resort to the law of torts." (Citations omitted).

In *Neibarger*, the plaintiffs, purchasers of allegedly defective goods, brought negligence and strict liability claims in addition to contract claims under the Uniform Commercial Code ("UCC"). Applying the economic loss doctrine, the Supreme Court found that the plaintiffs claimed purely economic losses arising out of the quality of the products, and that those claims were already addressed by the UCC. Therefore, the Court held that the plaintiffs could not pursue their independent tort claims, remarking that "[a] contrary holding would not only serve to blur the distinction between tort and contract, but would undermine the purpose of the Legislature in adopting the UCC." *Id.*, 439 Mich. at 528, 486 N.W.2d 612. Put differently, "Article 2 would be rendered meaningless and 'contract law would drown in a sea of tort.'" *Id.* (quoting *East River Steamship Corp. v. Transamerica Delaval Inc.*, 476 U.S. 858, 866, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986)).[3]

Plaintiffs argue first that the economic loss doctrine does not apply to consumer transactions where there is no direct privity between the consumer and the defendant manufacturer. That theory has been rejected by both Michigan and federal courts. In *Sherman v. Sea Ray Boats, Inc.*, 251 Mich.App. 41, 649 N.W.2d 783, 788 (2002), the court, analyzing *Neibarger* in the context of antecedent case law, found the "argument that the economic loss doctrine applies only to 'commercial' or 'non-consumer' transactions is without merit...." Although *Sherman* declined to address the privity of contract issue (because it was not raised), it did cite with approval *Citizens Ins. Co. v. Osmose Wood Preserving, Inc.*, 231 Mich.App. 40, 585 N.W.2d 314 (1998), noting that the court in that case "held that the fact that the owner was not in a position to negotiate the sale or foresee the injury could not avoid the economic loss doctrine, even in the absence of privity of contract." *Sherman*, 251 Mich.App. at 54, 649 N.W.2d 783.

In *Farm Bureau Insurance v. Deere Company*, 2009 WL 104139, *2 (W.D.Mich. 2009), Judge Quist, citing *Sherman*, held that neither privity nor the commercial nature of a transaction were required for application of the economic loss doctrine:

"Farm Bureau argues that the economic loss doctrine has been applied in the absence of privity only where the parties were commercial entities and privity was irrelevant to the availability of a remedy for breach of warranty. It attempts to distinguish the cases in which courts have applied the doctrine in the absence of privity by noting, "[i]n those cases ..., the defendant was a supplier of a product, the plaintiff was the consumer of that product, and the economic losses emanated from the failure of the product to meet the expectations of the ... consumer." But, that is the case here. Furthermore, *Sherman* makes clear that whether the purchaser is a commercial entity is irrelevant. The critical considerations are the nature of the harm, the source of the implicated duty, and the policy interests underlying tort and contract law. These unequivocally warrant

---

**3.** The underlying rationale of the economic loss doctrine is applicable to claims under the Consumer Protection Act. *See Huron Tool and Engineering Company v. Precision Consulting Services, Inc.*, 209 Mich.App. 365, 374, 532 N.W.2d 541 (1995) ("[a]lthough the Supreme Court's discussion [in *Neibarger*] was linked closely to the UCC context of the case, the doctrine is not limited to the UCC"); *Williams v. Scottrade, Inc.*, 2006 WL 2077588, *6 (E.D.Mich.2006) (Duggan, J.) (applying economic loss doctrine in a Michigan Consumer Protection Act case); *Werwinski v. Ford Motor Co.*, 286 F.3d 661 (3rd Cir.2002) (the economic loss doctrine precludes fraud claim in a state consumer protection action).

the application of the economic loss doctrine in this case."

By contrast, in *Auto Owners v. Chrysler*, 129 Mich.App. 38, 341 N.W.2d 223 (1983), a 2–1 majority of a Court of Appeals panel found that the application of the economic loss doctrine in a consumer case required privity of contract. The dissent opined that where the UCC provides for recovery of economic losses, the economic loss doctrine precludes a tort action, regardless of whether the plaintiff is a consumer or a commercial entity. In *Sullivan Industries, Inc. v. Double Seal Glass Co., Inc.*, 192 Mich.App. 333, 480 N.W.2d 623 (1992), the Court of Appeals adopted the reasoning of the *Auto Owners* dissent in the context of a commercial transaction. *Sullivan Industries* cited *Great American Insurance Co. v. Paty's, Inc.*, 154 Mich.App. 634, 641, 397 N.W.2d 853 (1986), where the court observed that "the dissent in *Auto Owners* makes a strong argument for the proposition that a contractual relationship is unnecessary to invoke the [economic loss doctrine]."

In a recent decision, the Michigan Supreme Court put to rest the question of whether lack of privity in a consumer transaction precludes application of the economic loss doctrine. *See Davis v. Forest River, Inc.*, 485 Mich. 941, 774 N.W.2d 327 (2009). *Davis* involved the consumer sale of a recreational vehicle. There was no privity between the purchaser plaintiff and the defendant manufacturer. In the lower court decision, *Davis v. Forest River, Inc.* 278 Mich.App. 76, 91, 748 N.W.2d 887 (2008), the Court of Appeals declined to apply the UCC and the economic loss doctrine based on lack of privity, stating:

"[T]he UCC and the economic-loss doctrine apply to situations where the parties have some kind of contractual relationship with each other. No such contractual relationship existed here. The UCC and the economic-loss doctrine therefore simply do not apply."

In its order granting leave to appeal (*Davis v. Forest River, Inc.*, 483 Mich. 985, 764 N.W.2d 278 (2009)), the Supreme Court directed the parties to address a number of issues, including "whether the UCC requires privity to revoke acceptance of [a] purchase contract," and "whether the economic loss doctrine and the UCC ... apply to the plaintiff consumer's claims for breach of warranty." In its final order, found at 774 N.W.2d at 328, the Supreme Court vacated the judgment of the Court of Appeals and held that "the Uniform Commercial Code applies to this breach of warranty action, as it involves the sale of goods." Consequently, contrary to the Court of Appeals decision that the Supreme court vacated, the economic loss doctrine also applied, notwithstanding lack of privity between the consumer and the manufacturer. *Davis* thus settles any conflict between *Auto Owners*, *Farm Bureau Insurance* and *Sea Ray Boats*.[4]

The next question is whether the *intentional* torts alleged in Count II (common law fraud) and Count III (silent fraud) of the complaint are exceptions to the economic loss doctrine. In *Huron Tool and Engineering Company v. Precision Consulting Services, Inc.*, 209 Mich.App. 365, 532 N.W.2d 541 (1995), the court held that a claim of fraud in the inducement could survive independently of breach of contract or breach of warranty claims, so long

4. In *Pack v. Damon Corp.* 434 F.3d 810, 819–820 (6th Cir.2006), the Sixth Circuit reviewed the development of Michigan case law from *Auto Owners* to *Sullivan*, and concluded "that Michigan has abandoned the privity requirement for implied-warranty claims." The Supreme Court's decision in *Davis* validates the Sixth Circuit's conclusion in *Pack*. In the evolution of consumer law, the concept of privity is becoming an anachronism.

as the fraud claim was extraneous to the contractual or warranty dispute. *Id.,* 209 Mich.App. at 372–75, 532 N.W.2d 541. The court explained that "a claim of fraud in the inducement, by definition, redresses misrepresentations that induce the buyer to enter into a contract *but that do not in themselves constitute contract or warranty terms subsequently breached by the seller.*" *Id.* at 374, 532 N.W.2d 541 (emphasis added). However, "where the only misrepresentation by the dishonest party concerns the quality or character of the goods sold," *id.* at 373, 532 N.W.2d 541, the economic loss doctrine would preclude a fraud claim. *See also Snyder v. Boston Whaler, Inc.,* 892 F.Supp. 955, 961 (W.D.Mich.1994) (applying economic loss doctrine where plaintiff's fraud claims did not arise independently of the contract claims).

In this case, the Plaintiffs' fraud claims are premised on the theory that the more expensive razor blade is represented to be of superior or different quality than the lesser expensive blade, when in fact they are identical. The alleged fraud is inextricably related to the nature of the product and to the underlying consumer protection claims. The only damages are economic. Therefore, the fraud claims must be dismissed under the economic loss doctrine.[5]

## IV. CONCLUSION

I therefore recommend that Defendant's Motion to Dismiss Counts II and III [Docket # 18] be GRANTED, and that Count II (common law fraud) and Count III (silent fraud) of the Plaintiffs' complaint be DISMISSED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof (including weekends and intervening holidays) as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections (including weekends and intervening holidays), the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

---

5. An example of a fraud claim that could be maintained independently of the underlying UCC, warranty or consumer protection action would be as follows. The manufacturer advertises that every purchaser of its more expensive razor blade will be entered in a drawing to win a new car. In fact, there is no drawing and there is no new car. The fraud consists of false representations that have nothing to do with the quality or character of the product, and are thus extrinsic to the underlying warranty, contract or consumer protection claims.